PHIFER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 202. Argued May 7, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 354.)

26

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Two issues are involved on this review:

1. Was the defendant denied due process of law and his right to be represented by counsel of his choice when the circuit court denied his request for a continuance to substitute retained counsel for his court-appointed attorney?

2. Did the trial court err in admitting into evidence statements of the deceased, Floyd Brown, identifying the defendant as the man who shot him?

*Denial of continuance.*

The defendant, Prince Edward Phifer, was originally represented by Attorney Alvin H. Eisenberg. On November 8, 1972, Attorney John Udovc was substituted by stipulation. Approximately five months later on April 19, 1973, five days before the trial was scheduled to

commence, the defendant, through his attorney, petitioned the circuit court for a continuance to enable him to retain Attorney William Coffey and his firm. Attorney Udovc informed the court that the defendant had told him he no longer wished to be represented by Mr. Udovc and that the defendant's family had now obtained funds and could retain Attorney Coffey. Attorney Udovc admitted that his relationship with the defendant had not been great and that the defendant lacked confidence in him. Udovc stated that the differences between him and the defendant stemmed in part from Udovc's inability to get the defendant out on bail and further that when the defendant was actually released from the county jail in Udovc's custody, Udovc kept handcuffs on the defendant.

An associate of Attorney Coffey, Attorney John Murray, was present in court and stated that Attorney Coffey could be ready to try the case in another week. Later, Mr. Murray suggested that a two-day adjournment would be sufficient because he could begin to choose a jury and Mr. Coffey could take over when he was free.

Chief Judge LEANDER FOLEY heard the motion. He denied it, stating that he could not adjourn the matter. The court discussed the press of business in the Milwaukee courts; that Judge RICE had been brought in from outside the county specifically to hear this case and that this was done for the convenience of the defendant; that there would be problems in rescheduling the appearance of certain witnesses if the date set for trial should be changed.

The sixth amendment to the United States Constitution provides that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense. However, the amendment does not concern itself with who the counsel may be or how the counsel may be selected. In order to implement the

object of the sixth amendment, if a defendant wishes to hire his own counsel, he must be afforded a fair opportunity and reasonable time to secure counsel of his own choice.[1] The relationship between an attorney and his client is a highly confidential one, demanding personal faith and confidence in order that they may work together harmoniously.[2] However, the accused's right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice. It cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice and deprive such courts of their inherent power to control the same.[3]

The granting or denial of a continuance is within the discretion of the trial court.[4] The United States Supreme Court has said: [5]

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable re-

---

[1] *Crooker v. California* (1958), 357 U. S. 433, 78 Sup. Ct. 1287, 2 L. Ed. 2d 1448; *Chandler v. Fretag* (1954), 348 U. S. 3, 75 Sup. Ct. 1, 99 L. Ed. 4; *United States v. Johnston* (6th Cir. 1963), 318 Fed. 2d 288.

[2] *Lee v. United States* (D. C. Cir. 1956), 235 Fed. 2d 219; *Standards Relating to Providing Defense Services*, American Bar Association Project on Minimum Standards for Criminal Justice, at pages 50, 51, sec. 5.3, comment b.

[3] *Rahhal v. State* (1971), 52 Wis. 2d 144, 187 N. W. 2d 800; *State v. Scarbrough* (1972), 55 Wis. 2d 181, 197 N. W. 2d 790; *United States v. Bentvena* (2d Cir. 1963), 319 Fed. 2d 916; *United States v. McMann* (2d Cir. 1967), 386 Fed. 2d 611; *Lee v. United States, supra*, footnote 2; *Cleveland v. United States* (D. C. Cir. 1963), 322 Fed. 2d 401.

[4] *State v. White* (1972), 53 Wis. 2d 549, 554, 193 N. W. 2d 36; *Elam v. State* (1971), 50 Wis. 2d 383, 389, 390, 184 N. W. 2d 176.

[5] *Ungar v. Sarafite* (1964), 376 U. S. 575, 589, 84 Sup. Ct. 841, 11 L. Ed. 2d 921.

quest for delay can render the right to defend with counsel an empty formality. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."

How does a reviewing court determine whether a trial court has properly exercised its discretion in these matters? One federal court has said:

"Proper exercise of this discretion requires a delicate balance between the defendant's right to adequate representation of counsel at trial, and the public interest in the prompt and efficient administration of justice. On the one hand, a court may not insist upon expeditiousness for its own sake, but, on the other, a defendant cannot be allowed to insist upon unreasonable delay or inconvenience in the completion of his trial. What is a reasonable delay varies depending upon all the surrounding facts and circumstances." [6]

We agree that a balancing test is appropriate to review the exercise of a trial court's discretion on a request for the substitution of trial counsel with the associated request for a continuance. The factors listed by the majority in *Giacalone v. Lucas* are appropriate for the purpose of this balancing test:[7]

1. The length of the delay requested;
2. Whether the "lead" counsel has associates prepared to try the case in his absence;
3. Whether other continuances had been requested and received by the defendant;
4. The convenience or inconvenience to the parties, witnesses and the court;
5. Whether the delay seems to be for legitimate reasons; or whether its purpose is dilatory;
6. Other relevant factors.

[6] *Giacalone v. Lucas* (6th Cir. 1971), 445 Fed. 2d 1238, 1240.
[7] *Id.* at page 1240.

The *Giacalone Case* involved a request for a continuance until presently retained counsel could appear. Thus the second factor above was tailored to fit that fact situation. In the present case that factor should probably be put in more general terms: whether there is competent counsel presently available to try the case.

The defendant contends that applying the facts of the present case to the factors listed above results in the conclusion that in the present case the trial court abused its discretion in not granting a continuance to allow the defendant to retain William Coffey or one of his associates to appear for him.

In essence, Chief Judge FOLEY denied the requested continuance because of what would have been involved if the trial had been rescheduled. Judge FOLEY indicated that the present trial date had been specifically set to be of mutual convenience to the state and the defendant because it was difficult to arrange for the appearance of the medical examiner. He also stated that because of the press of business in Judge COFFEY'S court he had gone through the procedure of bringing Judge RICE to Milwaukee county so as to be available to try the case on the date set. Under these circumstances, we fail to see that Chief Judge FOLEY acted in an arbitrary or unreasonable way so as to constitute an abuse of discretion on his part in denying the requested continuance. The absence of an abuse of discretion here is further indicated by the fact that the defendant actually did not refuse to go forward with Mr. Udovc and did not appear to question Udovc's professional skills. The defendant stated that he would prefer to have Attorney Coffey if enough time would be allowed for Coffey to prepare. On balance we conclude that the trial court did not abuse its discretion in denying the requested continuance.

*Statements of the deceased Floyd Brown.*

The defendant claims that it was error to admit certain statements made by the deceased, Floyd Brown, in which he identified Edward Phifer as the person who had shot him. Over the objections of defense counsel that any statements of the deceased were inadmissible hearsay, the court allowed several witnesses to testify that Floyd Brown identified Edward Phifer as the man who shot him: (1) An aunt of Annie Ruth Brown testified that when she heard shots she ran out the back door of her home toward her niece's house; she saw Floyd lying face down, with one foot still in the car. She testified that she said "Floyd, Floyd." The deceased responded by saying "Gen, I'm shot." Geneva Brown testified that she then said: "You shot, too?" and Floyd Brown responded "Yes." She then testified that she asked him if he knew who shot him and that Floyd said: "Ed Phifer shot Ann and me." (2) Geneva Brown's husband also testified that he came to the scene of the shooting shortly after his wife and testified that in response to the question of who shot him, Floyd Brown stated that Ed Phifer did. (3) A patrolman for the city of Milwaukee police department testified that he had accompanied the decedent to the hospital in the police ambulance. He testified that he asked him if he knew who had done this to him and that Floyd Brown said: "I was shot by Edward Phifer." (4) Another police officer testified that several hours later he interviewed both victims at the hospital and that both gave him Edward Phifer's name. This officer also testified that he showed Floyd Brown five photographs and asked Mr. Brown to look through them and if he could identify the man who shot him he should inform the officer. The police officer testified that Floyd Brown looked through the photographs and when he came to the picture of Edward Phifer he handed the officer that photograph.

The trial court originally admitted the statements of Floyd Brown as dying declarations. In its decision on motions for a new trial, the court indicated it also felt the statements were admissible as excited utterances.

The statements testified to in the first three incidents listed above were admissible as excited utterances.

This court has several times quoted with approval Rule 512 of the American Law Institute Model Code of Evidence as properly stating the law in Wisconsin as regards the admission of statements as part of the *res gestae*.[8] This rule is now codified in the Wisconsin Code of Evidence as sec. 908.03 (1) and (2). Evidence of a hearsay statement is admissible if the statement was made while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter, or while the declarant was under the stress of a nervous excitement caused by the perception of the event or condition which the statement narrates or describes or explains.

The second type of declaration is generally referred to as an "excited utterance." In *State v. Smith*[9] this court stated that the usual question for the trial judge is whether the statement was in terms of time so related to an exciting event as to be trustworthy. In *Wilder v. Classified Risk Ins. Co.*[10] the standard was expressed more forcefully:

". . . It must be shown that the statement was made so spontaneously or under such psychological or physical pressure or excitement that the rational mind could not interpose itself between the spontaneous statement or utterance stimulated by the event and the event itself. The psychological basis for the *res gestae* exception is

[8] *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 114 N. W. 2d 466; *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538; *Cossette v. Lepp* (1968), 38 Wis. 2d 392, 157 N. W. 2d 629.
[9] *Supra,* footnote 8.
[10] (1970), 47 Wis. 2d 286, 292, 177 N. W. 2d 109.

that people instinctively tell the truth but when they have time to stop and think they may lie."

In *Cossette v. Lepp* [11] a witness testified that he found the declarant slumped on the stairs and asked what had happened. The declarant replied that he "tripped and fell." The declarant's son and his doctor stated that he repeated this explanation later at the hospital. This court held the first statement admissible as an excited utterance. The court felt it was not unreasonable for the trial court to conclude that due to the injuries received in the fall the declarant was under the stress of nervous excitement when he made his statement to the first person to come to his aid. However, it was felt that the later statements to the son and doctor were too separated in time from the event to be admissible.

*Cossette* is very similar to the situation before us now. Here, the declarant was found sprawled on the ground shortly after he was shot. Floyd Brown told the first person who came to his aid that he had been shot and in response to the question of who shot him he named Edward Phifer as the gunman. In the *Cossette Case* the explanation came in response to a question also but this did not bar its admissibility. McCormick states:

". . . Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought, and where the time interval permitted such thought these factors might swing the balance in favor of exclusion." [12]

Here the shock of the event must have been as great or greater than the fall and injury in *Cossette*. The time interval between the shooting was short enough to allow the admission of the statements made to Geneva Brown,

[11] *Supra*, footnote 8.

[12] McCormick, *Evidence* (2d ed. 1972), ch. 29, p. 706, sec. 297.

her husband, and the ambulance attendant. The statement to the ambulance attendant came ten or fifteen minutes after the shooting; however, the declarant had just been removed from his position on the pavement and was for the first time receiving some medical aid. The shock of the event was great enough to make it reasonable that at that time the declarant was still in an excited state.

The later identification at the hospital, described as the fourth incident above, is not admissible as an excited utterance. We do not reach the question of whether that statement was admissible as a dying declaration, since in any event that identification is merely cumulative and, therefore, its admission, even if error, would not be prejudicial.

*By the Court.*—Judgment and order affirmed.