MULKOVICH, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–325–CR. Argued June 3, 1976.—Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 198.)

---

[8] *See: State ex rel. Reynolds v. Smith* (1964), 22 Wis. 2d 516, 126 N. W. 2d 215; *Schoonover v. Viroqua* (1944), 245 Wis. 239, 14 N. W. 2d 9.

For the plaintiff in error there was a brief by *Howard B. Eisenberg*, state public defender, *Richard M. Sals*, assistant state public defender, and *Mark A. Frankel*, of counsel, of Madison, and oral argument by *Mr. Sals*.

For the defendant in error the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HEFFERNAN, J. Michael C. Mulkovich, after a trial by jury, was found guilty of burglary for a violation of sec. 943.10 (1) (a), Stats. On April 30, 1974, he was sentenced to eleven years in the state prison on a burglary repeater charge, with the sentence to run consecutive to a seven-year sentence previously imposed after the revocation of probation. Writs of error were issued by this court to review the judgment of conviction and the orders denying the defendant's motions for a new trial and modification of sentence.

We conclude that the trial judge committed prejudicial error when, shortly after the impanelling of the jury, he read to the jury not only the portion of the information charging the defendant with the crime for which he was being tried, but also the allegations in the district attorney's information that the defendant was a repeater and had been previously convicted of a felony. We conclude also that the trial judge committed an error of constitutional proportions when, without justifiable

cause, he denied the defendant the right to counsel of his own choosing at the time of sentencing. Such error is prejudicial as a matter of law. The latter error, however, would vitiate only the sentence; but, because of the prejudicial error with respect to reading the repeater charge to the jury, we reverse the conviction and remand for a new trial.

After the jury was impanelled to hear the case, the judge personally read the information to the jury. The first count recited the district attorney's charge that the defendant committed the crime of burglary. This was properly read to the jury. However, the judge read the second count, which recited that the defendant "was convicted of a felony during the five (5) year period immediately preceding the commission of the crime" charged in count one, that ". . . Michael Charles Mulkovich was convicted . . . of the crime of Forgery . . . and said Michael Charles Mulkovich is a Repeater . . . ."

■ That it was error to read this repeater charge to the jury is without question. A repeater charge is relevant only to the action of the trial judge in imposing sentence after the jury has made the finding of guilt in respect to the crime tried before it. It must be withheld from the jury's knowledge.

■ Since at least 1909 this court has held that a defendant charged under a repeater statute has the right to have all evidence of any prior conviction kept from the jury trying the instant offense. Prejudicial error is committed when such information is given to the jury. *Howard v. State* (1909), 139 Wis. 529, 121 N. W. 133; *Block v. State* (1968), 41 Wis. 2d 205, 163 N. W. 2d 196; *State v. Meyer* (1951), 258 Wis. 326, 46 N. W. 2d 341; and *Wells v. State* (1968), 40 Wis. 2d 724, 162 N. W. 2d 634.

The state argues that the defendant waived any objection to the reading of the repeater charge by not im-

mediately objecting and moving for a mistrial. A party to litigation cannot, knowing that an error has been committed, rely on the hope that a jury may nevertheless rule in his favor and later claim that there was error warranting a mistrial. We have said that the failure to object promptly constitutes waiver. An objection should be made as soon as possible so the trial court may forthwith take appropriate steps to cure the error or to minimize possible prejudice. Moreover, in a criminal case, a defendant who delays a motion for a mistrial knowing that grounds exist prejudices the state in the operation of its criminal law system and causes inordinate delay and an unnecessary expenditure of public funds. *See: Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789; *Davis v. State* (1973), 61 Wis. 2d 284, 212 N. W. 2d 139; *Wagner v. American Family Mut. Ins. Co.* (1974), 65 Wis. 2d 243, 222 N. W. 2d 652. None of these cases stating the general proposition controls the instant situation.

Although the state contends that no objection was made to the reading of the repeater charge until the following morning, this assertion is unsupported by the record. The record shows that, late in the afternoon and immediately after the impanelling of the jury, and following the reading of the information, the assistant district attorney, in the absence of the jury, questioned the propriety of placing sec. 939.62, Stats., the repeater charge, before the jury. Defense counsel also said that he wished to be heard in respect to this question. The trial judge stated that the matter would be considered at the commencement of court the following morning. The next morning, before the jury was called to the courtroom, defense counsel specifically objected to the reading of the repeater charge to the jury and moved for a mistrial.

The trial judge, although apparently acknowledging that it was error to have read the repeater charge to the

jury, concluded that it was not prejudicial and denied the motion. Under these circumstances, where the issue was brought to the trial judge's attention immediately after the jury was dismissed from the courtroom, and the appropriate motion was made, argued, and ruled upon before any further proceedings were had in the trial, there was no waiver. The motion for mistrial was promptly made and the error was timely brought to the trial court's attention.

Although the trial judge indicated, upon the denial of the motion, that he would inform the jury that the matters in the information were charges only and subject to proof in accordance with the rules of evidence, and he gave such general instruction, he never again adverted to the repeater charge, and, of course, he could not have told the jury that the repeater allegation was a matter to be proved during the course of the trial. Clearly the cat was out of the bag, and the general admonitions of reaching a verdict in conformance with the proof was irrelevant to the judge's assertion that the defendant had committed one or more felonies in the past.

It is also argued that this acknowledged error was not prejudicial, because the defendant admitted, in the course of trial, that he had committed previous felonies. We do not find this persuasive, for the defendant was almost compelled to take the stand and admit prior felonies once the judge had read the repeater information. The reading of the information was direct evidence of prior crime put in by the state before the defendant had an opportunity to admit or deny prior convictions. It was not used, as perhaps it could have been, for impeachment purposes. The fact that this information was brought in erroneously at an inappropriate time may have had a substantial influence on the defendant's decision to take the stand. Had the defendant elected to not take the stand, evidence of prior crimes would have been inad-

missible. Once, however, the repeater charge had been read to the jury, the defendant and his counsel might have concluded that the damage had been done and there was nothing to lose by admitting other felonies.

It is argued by the state, relying on Wisconsin cases, that the error was not prejudicial. In those cases, it appears either, as in *Wells, supra,* there was evidence of a deliberate waiver, or the district attorney, not the judge, read the information to the jurors.

We find those cases which have held an error of this kind not prejudicial do not conform with the facts here. We believe that the legal principles of *Wells, supra,* control this case. *Wells* held unequivocally that, ". . . comment by the state on *voir dire,* either by way of statement or by way of reading the entire information, was prejudicial." (P. 732) In *Wells,* our court, in affirming the jury's conviction, emphasized that the defendant, as a matter of deliberate strategy, did not move for a mistrial. The contrary is true here.

We believe the language used by Justice GEHL in the dissent to *Meyer, supra,* on the general subject is appropriate here. As *Wells* demonstrates, the majority opinion in *Meyer* no longer represents the law of Wisconsin. Justice GEHL said:

"I am of the opinion that the court erred in permitting the state to show in its presentation of the case and in the presence of the jury, the fact of defendant's conviction of an offense in 1931. Manifestly, it was not nor could it have been offered for the purpose of impeachment; defendant had not yet taken the stand. At that stage of the trial it had no place in the case except as it might have been received for the purpose of imposing sentence under the 'repeater' statute.

". . .

"The court should hesitate to abandon the rule granting to an accused the fundamental right to be tried only upon evidence which bears upon the specific offense charged against him—an ancient right firmly im-

bedded in our jurisprudence—and one as valuable to the body of society as it is to the individual on trial. Important to society, because if we permit it here, where it may seem on account of the apparent guilt of the defendant that he has not been prejudiced, it is at least possible that it may be permitted in the case of an innocent person accused of a violation.

" 'From the time when advancing civilization began to recognize that the purpose and end of a criminal trial is as much to discharge the innocent accused as to punish the guilty, it has been held that evidence against him should be confined to the very offense charged, and that neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. This was predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him.' *Paulson v. State* (1903), 118 Wis. 89, 98, 94 N. W. 771.

"Nor should we assume that the legislature in adopting the provisions of the 'repeater' statute intended to abandon the safeguard. It stated its purpose in language and form to permit proof of a prior conviction solely for the purpose of empowering the judge to deal differently with a first offender than he might with one of incorrigible and dangerous character. The habitual criminal is, under our system, entitled to the same fair trial as is the first offender.

". . .

" 'They are cited more especially to show how uniformly courts have held that one cannot be deemed to have had fairly tried before a jury the question of his guilt of the offense charged when their minds have been prejudiced by proof of bad character of accused or former misconduct, and thus diverted and perverted from a deliberate and impartial consideration of the question whether the real evidentiary facts fasten guilt upon him beyond reasonable doubt. In a doubtful case even the trained judicial mind can hardly exclude the fact of previous bad character or criminal tendency, and prevent its having effect to swerve such mind toward accepting conclusion of guilt. Much less can it be expected that jurors can escape such effect.' *Paulson v. State, supra* (p. 99)." *Meyer, supra,* pages 345–348.

We are satisfied, in accordance with the rationale of *Wells* and the dissenting opinion of Justice GEHL in *Meyer,* that the trial judge's error in reading the repeater charge to the jury was prejudicial and a mistrial should have been granted at the time the motion was timely made by defendant's counsel. The conviction must be reversed and cause remanded for a new trial.

While the above error is dispositive of the case, other errors were committed in the course of the trial.

Prejudicial error was committed when the trial judge refused to permit retained counsel of defendant's choice to appear at the sentencing following the conviction. The jury's verdict was returned on January 7, 1974. The trial counsel stipulated to a substitution of attorney for the purpose of sentencing. Defendant's petition to approve the substitution of attorney was filed on March 28, 1974. A renewal of the request for substitution was made in open court on April 8, 1974. The substitution was denied.

On April 30, 1974, the attorney of the defendant's choice was present in court and prepared to represent the defendant at the sentencing proceedings. The trial judge, however, refused to permit the substitution and insisted on having the argument on sentencing made by trial counsel. The trial judge stated, on July 9, 1974, at the hearing for a new trial, that no one:

". . . is in a better position to argue on the merits of the case as far as disposition than the attorney who sits in the trial of the matter and has for some period of time acted in preparation for the trial of the matter and is aware of the problems, the pluses and minuses inherent in his client."

Accordingly, this decision to refuse to hear counsel of the defendant's choice was made solely on the trial judge's belief that trial counsel would better represent

the defendant than the attorney the defendant desired. There was no finding that the proposed counsel was incompetent. It was merely the exercise of the trial judge's will that the defendant's choice of counsel was disregarded.

■ This court has frequently said that, except in cases of indigency, a defendant may have whatever counsel he chooses to retain and may refuse to accept the services of counsel he does not want. *Baker v. State* (1893), 86 Wis. 474, 56 N. W. 1088.

■ ■ In the usual case, due process is denied when counsel is imposed upon a defendant against his will. *Browne v. State* (1964), 24 Wis. 2d 491, 511, 512, 129 N. W. 2d 175, 131 N. W. 2d 169. The right to be represented by counsel of one's own choosing applies to sentencing as well as to trial. *Washington v. United States* (9th Cir. 1961), 297 Fed. 2d 342.

This right, however, is not an absolute right and may be refused where the court properly exercises its discretion. *Phifer v. State* (1974), 64 Wis. 2d 24, 218 N. W. 2d 354, stated the appropriate standards for the exercise of judicial discretion when the choice of defendant's counsel is called into question. When there is no evidence that the proposed counsel is inadequate and when there is no evidence that a change of counsel is made for the purpose of delay, it is an abuse of discretion to refuse a request for retained counsel or for substitution of counsel.

■ We therefore conclude that the trial judge abused his discretion when he refused to permit the defendant to be represented by competent substitute counsel at a time when such substitution would not have interfered with the orderly procedures of the court.

The fact that we see no inadequacy in trial counsel is immaterial. *Glasser v. United States* (1942), 315 U. S. 60, 62 Sup. Ct. 457, 86 L. Ed. 680; *United States v.*

*Johnston* (6th Cir. 1963), 318 Fed. 2d 288; *Gadsden v. United States* (D. C. Cir. 1955), 223 Fed. 2d 627. Improperly forcing a defendant to accept an attorney not of his own choice in cases involving retained, rather than appointed, counsel violates due process and renders the sentence void. *Reickauer v. Cunningham* (4th Cir. 1962), 299 Fed. 2d 170; *Releford v. United States* (9th Cir. 1961), 288 Fed. 2d 298.

Accordingly, even were we to find that the reading of the repeater charge to the jury by the judge did not compel a new trial, we would be obliged to set aside the sentence and remand for resentencing.

Since we reverse because of prejudicial error in respect to the reading of the repeater charge, we do not dwell upon all alleged errors. Suffice it to point out that we find no basis for the defendant's claim that the counsel who represented him during trial and at sentencing failed to conform to standards required under *State v. Harper* (1973), 57 Wis. 2d 543, 205 N. W. 2d 1.

■ We also conclude that the trial judge did not err in refusing a substitution of attorney immediately before the impanelling of the jury on January 2, 1974. Although counsel and witnesses were present, and the defendant had ample opportunity before that date to have asked for substitution of counsel, no request for a substituted trial attorney was made until the eleventh hour. While the accused has the right to select his own counsel, such choice "cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice." *Phifer v. State, supra,* page 30. We said in that case that granting a continuance for the purpose of substitution of attorney is within the discretion of the trial judge, and that the

propriety of the discretionary action depends upon the circumstances when the request is made. We said:

" 'Proper exercise of this discretion requires a delicate balance between the defendant's right to adequate representation of counsel at trial, and the public interest in the prompt and efficient administration of justice. On the one hand, a court may not insist upon expeditiousness for its own sake, but, on the other, a defendant cannot be allowed to insist upon unreasonable delay or inconvenience in the completion of his trial. What is a reasonable delay varies depending upon all the surrounding facts and circumstances.' " *Phifer, supra,* page 31.

In the instant case, when the defendant requested the continuance, numerous witnesses were present in court and the jury panel was awaiting call. The trial date had been set for more than two months. Under the circumstances here, the trial judge properly exercised his discretion in refusing the last minute substitution when the request reasonably could have been made at a far earlier date. We hold that the trial judge had reason to conclude, as he did, that the request was for a dilatory purpose, and he properly denied it.

A more serious issue is presented by the fact that the trial judge *sua sponte,* after the close of the first day of trial, ordered the defendant's bail revoked and the defendant remanded to the custody of the sheriff. He reached this conclusion on the ground that he considered as dilatory the defendant's last minute attempt to substitute counsel. The trial judge concluded that the remand was "necessary to preserve inviolate the ability to proceed with this jury trial."

In the exercise of proper discretion and in the furtherance of the orderly administration of justice, a trial judge does in some circumstances have the authority to remand a defendant to custody. *Bitter v. United*

*States* (1967), 389 U. S. 15, 88 Sup. Ct. 6, 19 L. Ed. 2d 15. *Beverly v. State* (1970), 47 Wis. 2d 725, 731, 177 N. W. 2d 870, indicated that trial courts have that right only in the exercise of sound discretion. Even after the trial has commenced bail cannot be revoked without reason. Where bail is revoked without a stated and justifiable reason, the right to be otherwise free on bail is impaired and the presumption of innocence until guilt is proved is impinged upon. Discretion must be properly exercised. *See: Dorman v. United States* (D. C. Cir. 1970), 435 Fed. 2d 385, 398; *Carbo v. United States* (9th Cir. 1961), 288 Fed. 2d 282. It is the general rule, as stated in *Carbo, supra,* that there must be such foundation for the revocation of bail as would warrant the court to reasonably believe that such revocation is necessary to insure the orderly administration of justice. When such finding cannot be made, the revocation of bail constitutes an abuse of discretion. *United States v. Allison* (9th Cir. 1969), 414 Fed. 2d 407; *United States v. Stroud* (9th Cir. 1973), 474 Fed. 2d 737; and *Carbo, supra.*

In the instant case, the only expressed reason for the trial judge's order to revoke was that the last minute request—as the trial was to begin—for substitution of counsel was the dilatory tactic. That dilatory tactic is not, however, to be equated necessarily with the conclusion that incarceration was forthwith necessary to prevent further disruption of the trial. While the trial judge may well have been correct in his apprehensions, no opportunity was given to the defendant or his counsel to rebut the offhand conclusion that the defendant should not be allowed bail. In *United States v. Stroud, supra,* the court found an abuse of discretion where the trial court revoked bail without allowing the defendant a hearing at which he might have been able to rebut or explain

the evidence which the trial court thought to justify revocation. As the court said in *Stroud,* "At the least, the judge should have stated his reasons and given Stroud's counsel a chance to rebut them." (P. 738)

As an alternative to a complete revocation of bail, a trial judge is obliged to consider less drastic alternatives, for example, increasing the amount of the bail. *See: United States v. Bentvena* (2d Cir 1961), 288 Fed. 2d 442.

 We conclude that the trial judge abused his discretion when he failed to follow the standards required in determining that bail should be revoked.

 On the other hand, revocation of bail is not *ipso facto* prejudicial. There must be a showing that the defendant had been actually prejudiced in the trial of his case because he was jailed during his trial. The record is devoid of any evidence that would show such prejudice, and we accordingly conclude that this abuse of discretion did not result in such prejudice as would undermine the jury's verdict.

We conclude, however, that, because of the prejudicial effect of the judge's reading of the repeater charge to the jury, the conviction must be reversed and the cause remanded for a new trial.

*By the Court.*—Judgment and orders reversed, and cause remanded for a new trial.

CONNOR T. HANSEN, J. *(concurring in part; dissenting in part).*

The majority of this court would reverse and remand for a new trial. It is concluded reversal is dictated because the information contained allegations of the defendant's prior criminal record for the purposes of raising the issue under sec. 939.62, Stats., **Increased penalty for habitual criminality,** and the trial court read the entire information to the jury shortly after it was

impanelled. This reading of the information included the details set forth therein concerning the prior criminal record of the defendant. I would agree with the majority. It was prejudicial error to present this information to the jury at this time and under these circumstances, as the majority concludes, a reversal and a new trial is commanded.

However, once having disposed of this appeal by ordering a new trial, the majority then proceeds to consider an issue which is no longer in the case and, in my opinion, not relevant to a new trial.

At the time of sentencing, the trial court denied a motion of the defendant to substitute attorneys. The majority of the court holds this to be prejudicial error. This writer respectfully dissents from this determination. In the first place, because of the decision to reverse and remand for a new trial, it is absolutely unnecessary to reach the issue. Secondly, if the issue were to be reached, under the facts of this case, I would not hold it to be prejudicial error. In support of his decision not to grant the motion for substitution of counsel, the trial judge stated that no one:

". . . is in a better position to argue on the merits of the case as far as disposition than the attorney who sits in the trial of the matter and has for some period of time acted in preparation for the trial of the matter and is aware of the problems, the pluses and minuses inherent in his client."

The majority finds the trial judge abused his discretion in denial of the motion for substitution of counsel and, therefore, committed prejudicial error. On the basis of the record before us, if it were necessary to reach this issue, and I submit it is not, this writer would find the trial court properly exercised his judicial discretion and did not commit prejudicial error.

I am authorized to state that Mr. Justice ROBERT W. HANSEN joins in this opinion concurring in part and dissenting in part.