STATE of North Dakota, Plaintiff
and Appellee,

v.

Kevin Richard SHORES, Defendant
and Appellant.

Cr. No. 880370.

Supreme Court of North Dakota.

Aug. 28, 1989.

Ronald W. McBeth (argued), Asst. States Atty., Wahpeton, for plaintiff and appellee.

Krassin Law Office, Wahpeton, for defendant and appellant; argued by Don R. Krassin.

MESCHKE, Justice.

Kevin Richard Shores appealed from a jury conviction of possession of a controlled substance. Shores claimed that, when the trial court refused to delay the beginning of his trial, he was unconstitutionally deprived of assistance of his tardy counsel and that the evidence was insufficient to convict him. We affirm.

In early April 1988, Shores went on leave from the Navy at San Diego, California, driving to Minnesota to visit relatives. About 9:30 p.m. on April 4, Shores walked to the farm home of Ivan Hegseth, fourteen miles north of Wyndmere, North Dakota, seeking help to get his car out of the road ditch nearby. Ivan drove Shores back to his car, where they were joined by Ivan's brother, John, who had been called by Ivan's wife. Together, they got Shores's car out of the ditch.

Shores behaved strangely. The Hegseth brothers believed that he needed other help. Ivan drove Shores to Wyndmere. John followed in Shores's car. They left him at the home of Deputy Sheriff Dan Baumann, where Deputies Pete St. Germaine and Curt Berg were visiting.

In a brief talk with Shores, the three deputies also observed his strange behavior and concluded he needed medical attention. They physically restrained Shores and took him to a hospital. Deputy Berg drove Shores's car to the garage at the Law Enforcement Center in Wahpeton. During an inventory search of the car, a suspicious-looking package of white powder was found, which turned out to be methamphetamine, a controlled substance commonly known as "crystal" or "speed." When he got out of the hospital, Shores was arrested for illegal possession of a controlled substance.

Shores retained a non-resident lawyer, Rudolph Lion Zalowitz, and requested a jury trial. The trial court required association of a local lawyer. DeLayne G. Nassif of Fargo agreed to serve in that role. Zalowitz appeared with Shores in court on April 27, May 5, and June 20, 1988. Impatient with Zalowitz's garrulity at the pretrial conference on June 20, the trial court warned that Nassif "better be prepared to try this case himself, because as far as I'm concerned, you are getting into matters

that are not relevant and you are talking at length on matters that are not relevant."

At the opening of the trial on July 12, Shores, Nassif, and Frances Cannon, Zalowitz's paralegal, were present. Zalowitz was not.

Zalowitz's air flight from Newark, New Jersey had been delayed by weather and he had missed a connecting flight at Minneapolis the prior evening. On behalf of Shores, Nassif sought a delay of several hours to allow time for Zalowitz to get to the trial in Wahpeton. The trial court refused a postponement and directed that selection of the jury proceed in Zalowitz's absence. Nassif conducted the examination of jurors and selected the jury. After the jury was selected, Zalowitz arrived and completed the three-day trial as counsel for Shores. The jury convicted Shores. Shores appealed.

Shores claimed that he was deprived of his constitutional right to assistance of his counsel by the absence of Zalowitz from jury selection. Shores insisted that his attorney was Zalowitz, not Nassif, with whom he had little contact. Shores argued that a criminal defendant was constitutionally entitled to be assisted by counsel of his choice. Since neither Zalowitz or Shores "could foresee the weather delays," and since "neither was attempting to unduly delay proceedings," Shores argued that his constitutional right to assistance of counsel was infringed by jury selection without Zalowitz's help. We disagree.

■ Shores relied upon excerpts from decisions in other states recognizing the right of an accused, at his own cost, to be represented by counsel of his choice. *See,* for example, *Mulkovich v. State,* 73 Wis.2d 464, 243 N.W.2d 198 (1976) and *Woodbury County v. Anderson,* 164 N.W.2d 129 (Iowa 1969). These decisions implemented the important constitutional guarantee of an accused's right to assistance of counsel in his defense.[1] But, this constitutional guarantee is not absolute; it is not paramount to the constitutional power of the judicial branch of government to adopt reasonable procedures for adjudicating crimes. Put in this perspective, it was counsel's absence that deprived Shores of his assistance, not the judge's actions. Shores's grievance is misdirected.

Occasionally, every judge needs to reasonably adjust the courtroom schedule for a sudden illness, a death, or some other uncontrollable and unexpected event affecting a trial participant. But, more than an unplanned travel delay must be shown to demonstrate that a trial court was unreasonable in refusing a postponement for tardiness of chosen counsel. Air carrier delays are not unexpected; they are commonplace. Without more, we cannot reasonably require a trial court to manipulate its schedule to accommodate a lawyer whose only excuse is that airlines made him late.

The time of the jury trial had been scheduled for more than three weeks. Court officials, fifty prospective jurors, and the prosecutor with his witnesses were present and ready to go, as was Shores and his local counsel, Nassif. Nassif had been forewarned to be ready to act. Zalowitz's paralegal was present and able to aid local counsel. The trial court explained that it had other pressing matters scheduled to follow immediately after completion of this trial. These were all reasonable factors for the trial court to take into account.

Nothing indicates that Nassif bungled or was ineffective. There is no claim that any member of the jury was biased or disqualified. By itself, the fact that Shores was convicted does not demonstrate prejudice. Shores has shown only displeasure, not prejudice, in his own attorney's tardiness.

A trial court has great latitude and discretion in conducting a trial. *State v. Er-*

---

1. The Sixth Amendment to the United States Constitution guarantees:
   "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense."
   The North Dakota Constitution at Article I, Section 12, also guarantees:

   "In criminal prosecutions in any court whatever, the party accused shall have the right ... to appear and defend in person and with counsel."

*ban,* 429 N.W.2d 408, 413 (N.D.1988). A trial court's denial of a postponement will not be overturned on appeal unless the court has abused its discretion. *Id.* We conclude that the trial court acted reasonably in going ahead with jury selection even though Shores's chosen counsel was tardy because of travel delays.

Shores claimed that the prosecution did not prove that he in fact possessed a controlled substance. Characterizing the evidence as "circumstantial and tenuous," Shores argued that the evidence showed other people were in Shores's car where the substance was found, that links in its subsequent chain of custody were missing, and that the sum of the evidence did not connect the substance to Shores. But, Shores's arguments are about the weight of the proof, not about its legal sufficiency.

We review the evidence in the light most favorable to the jury verdict. *State v. Lund,* 424 N.W.2d 645 (N.D.1988). Circumstantial evidence can establish criminal culpability, including possession of a controlled substance. *State v. Larson,* 274 N.W.2d 884 (N.D.1979). From our review, we conclude that the evidence was sufficient to convict Shores of possession of a controlled substance.

Although other persons had been in Shore's car where the substance was located, the presence of others does not preclude an inference of possession of something found in the car that he had recently driven. *State v. Larson, supra.* The testimony about the chain of custody showed that the substance seized was the substance analyzed by the chemist, who testified. The evidence physically associated Shores with the substance found in his car. There was more.

The chemist testified that the substance was amphetamine, a controlled substance which, in high concentrations, can cause hallucinations. Shores told Ivan Hegseth that a big white truck with wings drove him off the road. Shores saw people and heard voices when no one was there. The deputies also testified about Shores's strange behavior, including his statements that he saw dead people on the hoods of cars. Before taken to the hospital, Shores told Deputy Baumann that he had been using crystal amphetamine to stay awake during his cross-country drive. The evidence was sufficient.

We affirm.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.