COURT OF APPEALS
DECISION
DATED AND FILED

January 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP1151**

Cir. Ct. No. 2018TP149

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT I**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E.W., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

J.T.,

      RESPONDENT-APPELLANT.

---

       APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed*.

¶1    DUGAN, J.[1]  This is an appeal of the Milwaukee County Circuit Court's[2] order denying J.T.'s postdisposition motion requesting to withdraw his no contest plea to the grounds contained in the petition to terminate his parental rights as the father of E.W.  J.T. contends that his no contest plea was not knowingly, voluntarily, and intelligently made and that he received ineffective assistance of counsel when he entered his no contest plea.  He also contends that the circuit court violated his right to counsel of his choosing.  For the reasons set forth below, this court affirms.

## BACKGROUND

¶2    J.T.'s daughter, E.W., was born on May 13, 2017, with cocaine and alcohol in her system, and she was placed with a foster family on July 5, 2017, after E.W.'s mother was unable to care for her.  After E.W. spent over a year with a foster family, the State filed a termination of parental rights (TPR) petition on July 10, 2018.[3]  As grounds for the petition as it related to J.T., the State alleged that J.T. failed to assume parental responsibility under WIS. STAT. § 48.415(6).  As alleged in the petition, J.T. "failed to establish a substantial parental relationship with the child, in that he has failed to come forward to accept and exercise

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The Honorable David Feiss presided over the initial proceedings in this case.  The Honorable Gwendolyn Connolly presided over the proceedings beginning in January 2019, including the proceedings in which J.T. pled no contest, and issued the decision and order terminating J.T.'s parental rights.  The Honorable Marshall B. Murray presided over the hearing on the postdisposition motion and issued the decision and order denying the motion.  We refer to Judge Murray as the postdisposition court.

[3] The State petitioned to terminate the parental rights of E.W.'s mother in addition to J.T.'s parental rights as the father.  E.W.'s mother was found in default for a failure to appear during these proceedings, and her rights as E.W.'s mother are not at issue in this appeal.

significant responsibility for the child's daily supervision, education, protection and care." The petition alleged examples that J.T. failed to provide support for E.W. and act as a caregiver and also alleged that J.T. failed to attend E.W.'s medical appointments and be involved in making decisions about E.W.'s education. The petition further alleged that J.T. had been incarcerated shortly after E.W.'s birth and remained incarcerated at the time of the filing of the petition.

¶3 Attorney Deborah Stringenz was appointed to represent J.T. and appeared as his counsel at the hearing on the petition on August 6, 2018. J.T. entered a contest plea at that hearing, and a jury trial was scheduled for December 10, 2018. As a result of issues with producing J.T. to appear in person, the trial was rescheduled for April 1, 2019, for a time when J.T. anticipated being released from prison.

¶4 In March 2019, the trial was adjourned a second time after Attorney Stringez filed a motion to withdraw based on a significant material breakdown in communication, and the circuit court granted her motion. Attorney Cheryl Ward was subsequently appointed to handle J.T.'s case, and the trial was rescheduled for August 19, 2019. Shortly after her appointment Attorney Ward also moved to withdraw because she discovered she had a conflict of interest that J.T. was unwilling to waive.

¶5 Attorney Tawny Brooks was then appointed to handle J.T.'s case, and a fourth trial date was set for November 11, 2019. However, days before the November 11, 2019 trial date, J.T. requested that Attorney Brooks withdraw because he disagreed with Attorney Brooks on the direction she wanted to take his case and felt that she did not have enough time for him. J.T. told the circuit court that he wanted another attorney to represent him. The court asked J.T. if he knew

who the attorney was, and he responded attorney Mark Tishberg. The court then asked J.T. if he had retained Tishberg and he responded, "I talked to him several times." J.T. never said that Tishberg said that he would take the case or that he was available. Both the State and the guardian ad litem voiced concern about J.T.'s request because the proceedings had already been significantly delayed.

¶6 The circuit court denied J.T.'s request to have Attorney Brooks withdraw and explained:

> So this case has been pending since July of 2018. There have been a variety of counsel who have been appointed to assist you … through the pendency of this case.
>
> You are certainly free to retain new counsel if that is what you wish to do for the trial which will be next Monday, but the new counsel you retain, whether it's Mr. Tishberg or someone else, will need to be prepared to proceed with trial on Monday.
>
> I am not going to relieve Ms. Brooks because based on what you told me thus far, there isn't a basis for me to conclude that indeed there has been a breakdown in counsel, that she has not -- that is Ms. Brooks essentially represented your interests here in court such that I would be able to grant her leave to not proceed with trial.

J.T. decided to discuss the matter further with Attorney Brooks, the issue was never raised again, and Attorney Brooks ultimately continued as J.T.'s counsel.

¶7 The morning that J.T.'s trial was scheduled to begin, the circuit court addressed several matters, including motions *in limine* addressing J.T.'s criminal history, and made a series of rulings allowing the State to question J.T. about the number of crimes for which he had been convicted and the nature of some of those convictions. Another ruling the circuit court made concerned the ability to

introduce evidence of J.T.'s noncompliance with the CHIPS[4] order as part of the State's case based on the allegation of failure to assume parental responsibility. In addressing whether evidence could be introduced, the circuit court cited the jury instruction for a failure to assume parental responsibility:

> [A]s I review the jury instruction, it says whether insofar as considering whether there is a substantial parental relationship, the meaning of that is the acceptance and exercise of the significant responsibility for the daily supervision, education and protection as well as care of the child. And part of demonstrating that or failing to demonstrate that is whether the parent has complied with essentially the dispositional order in order to essentially assume that responsibility.
>
> Moreover, the jury instruction itself also outlines that the jury can consider all other evidence which bears on that issue which assists it in making its determination as to whether there has been a failure to assume.

¶8     Following the discussion on motions *in limine*, Attorney Brooks requested that the circuit court give the jury "the additional incarcerated parent instructions regarding how it relates to failure to assume" because she found that to be the "main issue" in the case. Attorney Brooks specifically requested that the circuit court instruct the jury with WIS JI—CHILDREN 346B, which is the jury instruction addressing how to handle a parent's incarceration in a TPR proceeding alleging a failure to assume parental responsibility. She described the instruction as describing "how an incarcerated parent does not in and of itself establish failure to assume parental responsibility."

---

[4] E.W. was found to be a child in need of protection or services (CHIPS) on August 21, 2017. The CHIPS order contained the conditions that E.W.'s parents were required to meet in order to have E.W. returned to their care.

¶9      When the proceedings resumed following a break, J.T. indicated that he wished to enter a no contest plea.  The circuit court conducted a plea colloquy with J.T. and accepted his plea.  After the disposition hearing, the circuit court ordered that J.T.'s parental rights be terminated.

¶10     J.T. filed a postdisposition motion and argued that he should be allowed to withdraw his plea.  The postdisposition court held a hearing on the motion and took testimony from Attorney Brooks and J.T.  The postdisposition court denied J.T.'s motion following the hearing.

## DISCUSSION

### I.      Withdrawal of J.T.'s No Contest Plea

¶11     J.T. argues that he is entitled to withdraw his no contest plea because his plea was not knowing, intelligent, and voluntary based on the circuit court's failure to fully explain the elements of failure to assume parental responsibility.  In particular, J.T. contends that the circuit court failed to explain the element of a "substantial parental relationship" to him during the plea colloquy when the circuit court failed to read the corresponding jury instruction defining that element, and as a result, he failed to understand the factors that could be considered in determining whether he had a substantial parental relationship with E.W. and that the totality of E.W.'s life would be considered.[5]  This court disagrees and concludes that J.T. has

---

[5] Specifically, J.T. argues that the circuit court should have read WIS JI-CHILDREN 346 to him at his plea colloquy, which provides in relevant part:

(continued)

failed to make a *prima facie* showing that his no contest plea was not knowingly, intelligently, and voluntarily entered.

¶12     "In termination of parental rights proceedings, Wisconsin law requires the circuit court to undertake a personal colloquy with the defendant in accordance with WIS. STAT. § 48.422(7)." *Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶25, 293 Wis. 2d 530, 716 N.W.2d 845.  Prior to accepting a no contest plea to the grounds alleged in a petition to terminate parental rights, the circuit court is required to, as is relevant here, "determine that the admission is made voluntarily with understanding of the nature of the acts alleged in the petition." WIS. STAT. § 48.422(7)(a).  However, there is no "specific checklist" for a circuit court in conducting a colloquy, and "[t]he questions to be asked depend upon the circumstances of the case." *Brown Cnty. DHS v. Brenda B.*, 2011 WI 6, ¶57, 331 Wis. 2d 310, 795 N.W.2d 730.

---

The term "substantial parental relationship" means the acceptance and exercise of significant responsibility for the daily supervision, education, protection, and care of (child). Substantial parental relationship is assessed based on the totality of the circumstances throughout the child's entire life.  In evaluating whether (parent) has had a substantial parental relationship with (child), you may consider factors, including, but not limited to, whether (parent) has expressed concern for or interest in the support, care, or well-being of (child), whether (parent) has neglected or refused to provide care or support for the child, whether (parent) exposed the child to a hazardous living environment, whether, with respect to a person who is or may be the father of the child, the person has expressed concern for or interest in the support, care, or well-being of the mother during her pregnancy, and all other evidence bearing on that issue which assists you in making this determination.  You may consider the reasons for the parent's lack of involvement when you assess all of the circumstances throughout the child's entire life.

¶13     The burden-shifting analysis that our supreme court laid out in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), applies when a defendant in a TPR proceeding alleges that a no contest plea was not knowingly, intelligently, and voluntarily entered. *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶6, 314 Wis. 2d 493, 762 N.W.2d 122. "Under that analysis, the [defendant] must make a prima facie showing that the circuit court violated its mandatory duties and must allege the [defendant] did not know or understand the information that should have been provided at the hearing." *Id.* If a defendant makes a *prima facie* showing, "the burden then shifts to the [petitioner] to demonstrate by clear and convincing evidence that the [defendant] knowingly and intelligently waived the right to contest the allegations in the petition." *Id.* This court "may examine the entire record, not merely one proceeding, and look at the totality of the circumstances to determine whether the circuit court's procedures and determinations are sufficient." *Waukesha Cnty. v. Steven H.*, 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607. Whether the defendant made a *prima facie* case is a question of law that this court reviews independently. *Brenda B.*, 331 Wis. 2d 310, ¶27.

¶14     A review of the record indicates that the proceedings were sufficient to establish that J.T. understood the nature of the "substantial parental relationship" element, even if the circuit court did not specifically read the jury instruction to J.T. The circuit court conducted a plea colloquy that spanned close to twenty pages of the hearing transcript and established that J.T. was aware of the nature of the grounds alleged in the petition to terminate his parental rights to E.W.

¶15     During the plea colloquy, the circuit court established that J.T. was educated—J.T. had a high school degree, had completed some college, and had no

difficulty reading or writing English. J.T. also answered, "Yes," when the circuit court asked if J.T. had a chance to review the petition and if he understood its contents. He likewise answered, "Yes," when the circuit court asked if he had a chance to discuss his no contest plea with Attorney Brooks and if he felt he had enough time to discuss his plea with her. After questioning J.T. about the rights he was giving up and his understanding of the TPR procedure and potential dispositions, the circuit court specifically pointed to pages nine and ten of the petition and reviewed the allegations of the petition with him. The circuit court explained that the State alleged that J.T. "failed to come forward and exercise[] and accept[] sufficient responsibility for the daily supervision, education, protection and care" of E.W. It also referenced the examples of J.T.'s failure to assume parental responsibility provided by the State in the petition. The circuit court revisited that J.T. understood the grounds alleged in the petition, and J.T. again replied, "Yes."

¶16 The circuit court additionally explained to J.T. what would have happened at the grounds phase of the proceedings if J.T. had proceeded with a trial and asked whether he understood that he "would have an opportunity to present evidence in [his] defense either as mitigating facts or mitigating circumstances and/or defense [he] may have to the allegation that [the] State has outlined in this petition." To this, J.T. replied, "No," indicating that he had not had a chance to discuss his possible defenses or mitigating circumstances with Attorney Brooks. However, Attorney Brooks clarified that she "spoke to [J.T.] about the things [they] would have argued at trial, ways [they] would disagree with arguments made by other witnesses, and [they] did speak about testimony that he would provide to support his position." J.T. then agreed that he did have a chance to discuss the facts in support of his contest posture with Attorney Brooks and did

discuss any disagreements that he had with the allegations made by the State in the petition. He further replied that he was satisfied with those discussions. Attorney Brooks then confirmed J.T.'s understanding of the allegations and facts in support of a contest posture, and the circuit court accepted J.T.'s no contest plea.

¶17 This court is satisfied that J.T. understood the grounds alleged in the petition. J.T. indicated that he had completed some college and could read and write English. The circuit court also questioned J.T. regarding his satisfaction with the discussions with Attorney Brooks about the facts in support of a contest position and confirmed that J.T. had reviewed the petition with Attorney Brooks prior to entering his no contest plea.

¶18 The circuit court also read the petition's description of a failure to assume parental responsibility and cited the examples provided as supported for J.T.'s failure to assume parental responsibility. There is no checklist that the circuit court must follow in conducting the plea colloquy and, therefore, no requirement that the circuit court had to read a particular jury instruction to J.T. to establish that he entered his no contest plea knowingly, voluntarily, and intelligently provided that the circuit court established J.T.'s understanding through another means. *See **Brenda B.***, 331 Wis. 2d 310, ¶57. The circuit court was able to establish J.T.'s understanding of the nature of the grounds alleged in the petition by referencing and reading a document in the record and then asking if J.T. understood the nature of the grounds based on that reading. This is an acceptable means of establishing J.T.'s understanding. *See **Bangert***, 131 Wis. 2d at 268-69 (providing a non-exhaustive list of ways for a circuit court to determine a criminal defendant's understanding of the nature of the charges against him before accepting a plea, including reading the criminal complaint).

¶19    The circuit court is only required to establish that J.T. understand the nature of the grounds alleged in the petition.  The instruction defines the nature of a substantial parental relationship as "acceptance and exercise of significant responsibility for the daily supervision, education, protection, and care of" of the child.  The circuit court read from the petition during the plea colloquy and summarized the nature of the grounds alleged in the petition as J.T. failed to "exercise[] and accept[] sufficient responsibility for the daily supervision, education, protection and care" of E.W.  This was all the circuit court was required to do.[6]  J.T. does not dispute that the circuit court advised him that substantial parental relationship as acceptance and exercise of significant responsibility for the daily supervision, education, protection, and care of E.W.  Rather, he argues that the circuit court was required to read the non-exhaustive list of factors listed in the jury instruction.  However, he does not cite any authority for that argument.  "Arguments unsupported by references to legal authority will not be considered." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶20    J.T., therefore, has failed to establish a *prima facie* case that his plea was not knowingly, voluntarily, and intelligently entered.

## II.    J.T. did not receive ineffective assistance of counsel

¶21    J.T. additionally argues that he is entitled to withdraw his no contest plea because he received ineffective assistance of counsel based on Attorney

---

[6] This is not to say that a circuit court should not read a jury instruction at a plea colloquy.  "The questions to be asked depend upon the circumstances of the case." *Brown Cnty. DHS v. Brenda B.*, 2011 WI 6, ¶57, 331 Wis. 2d 310, 795 N.W.2d 730.  Under the facts of this case, this court finds the plea colloquy sufficient, despite any alleged failure of the circuit court to read the requested jury instruction.

11

Brooks' failure to discuss the "substantial parental relationship" element with him and how a jury would consider his incarceration in deciding that element. However, this court concludes that Attorney Brooks was not ineffective because the record shows that she did, contrary to J.T.'s assertion, discuss this element with J.T.

¶22    A defendant is entitled to withdraw a no contest plea "only upon a showing of a 'manifest injustice' by clear and convincing evidence." *See State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). "[T]he 'manifest injustice' test is met if the defendant was denied the effective assistance of counsel." *Id.*

¶23    To prove ineffective assistance of counsel, a defendant must show two elements:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *A.S. v. State*, 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992) (citations omitted) (adopting the analysis from *Strickland v. Washington*, 466 U.S. 668 (1984), for TPR proceedings). "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. This court "will not reverse the circuit court's findings of fact unless they are clearly erroneous." *Id.* "Moreover, this court will not exclude the circuit court's articulated assessments of credibility and demeanor, unless they are clearly erroneous." *State v. Carter*, 2010 WI 41, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695. However, this court "independently review[s], as a matter of law, whether those facts demonstrate ineffective assistance of counsel." *Pico*, 382 Wis. 2d 273, ¶13.

¶24    In this case, J.T. fails the first prong of the analysis and is unable to show that Attorney Brooks performed deficiently. "To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell

below an objective standard of reasonableness' considering all the circumstances." *Carter*, 324 Wis. 2d 640, ¶22 (citation omitted). However, at the evidentiary hearing held on J.T.'s postdisposition motion, the postdisposition court found that Attorney Brooks discussed the substantial parental relationship element with J.T. and explained how J.T.'s incarceration would bear on a failure to assume parental responsibility. This court accepts that finding as it is not clearly erroneous.

¶25 Attorney Brooks testified that, while she could not remember specifics of any conversation she had with J.T., it is her practice to discuss with her clients the jury instructions explaining the elements of any grounds alleged in a TPR petition. She further testified that it would also have been her practice to discuss with J.T. how a jury would consider his incarceration because it would have been an important issue in determining whether J.T. failed to assume parental responsibility. The postdisposition court found Attorney Brooks' testimony in this regard to be credible and any testimony from J.T. contradicting Attorney Brooks to lack credibility. This court is bound by that credibility determination from the hearing.

¶26 Moreover, the record of the hearing immediately prior to J.T.'s no contest plea supports Attorney Brooks' testimony that she understood the role of J.T.'s incarceration in his case and would have discussed this fact with him. During the discussions leading up to J.T.'s no contest plea, Attorney Brooks requested that the circuit court read to the jury the instruction addressing incarcerated parents and how it relates to failure to assume parental responsibility. She considered it "very relevant" and "quite frankly, borders ineffective" if she failed to request the instruction because "an incarcerated parent does not in and of itself establish failure to assume parental responsibility." This court, therefore, concludes that counsel's performance was not deficient and J.T.'s argument fails.

### III.   J.T.'s right to hire counsel of his choosing was not violated

¶27    J.T. last argues that he was denied his right to hire counsel of his own choosing when the circuit court refused to adjourn the trial in order that Attorney Brooks could withdraw and he could hire Attorney Tishberg.

¶28    "One of the procedural safeguards the legislature has afforded to parents in termination of parental rights proceedings is the right to counsel." *State v. Shirley E.*, 2006 WI 129, ¶30, 298 Wis. 2d 1, 724 N.W.2d 623.   Thus, "[i]n a proceeding involving … an involuntary termination of parental rights, any parent who appears before the court *shall* be represented by counsel[.]"   WIS. STAT. § 48.23(2)(b) (emphasis added).   The court may discharge counsel only after a knowing and voluntary waiver.   Sec. 48.23(4m).   A defendant in a TPR proceeding is "entitled to retain counsel of his or her own choosing at his or her expense."   Sec. 48.23(5).   Whether a parent was denied his or her statutory right to counsel during a TPR proceedings is a question of law that this court reviews independently.   *See Shirley E.*, 298 Wis. 2d 1, ¶21.

¶29    In this case, J.T. argues that the circuit court erred when it refused to adjourn his trial for the fourth time, discharge his third appointed attorney, and allow him to hire Attorney Tishberg, the counsel of his choosing.   He relies on *Phifer v. State*, 64 Wis. 2d 24, 218 N.W.2d 354 (1974), as support for his argument that the circuit court violated his right to counsel of his choosing.

¶30    *Phifer* addressed an alleged violation of a criminal defendant's constitutional right to counsel found in the Sixth Amendment to the United States Constitution.   *Id.* at 30.   In *Phifer*, the defendant's second appointed attorney moved to withdraw and requested that the trial be adjourned in order that the

14

defendant could hire a new attorney of his choosing. *Id.* at 28-29. The defendant's attorney indicated that the relationship between him and the defendant "had not been great and that the defendant lacked confidence in him." *Id.* at 29. He also indicated that the defendant, prior to the hearing, had contacted an attorney who was willing to take the case. *Id.* at 28. The defendant's chosen attorney was present in court at the time of the request for withdrawal and confirmed that he was willing to accept the defendant's case and would be ready for trial with a two-day adjournment. *Id.* at 29. The circuit court denied the motion to withdraw, *id.*, and the circuit court's denial was affirmed by our supreme court, *id.* at 32.

¶31 This court fails to see any error in the circuit court's decision here. Attorney Brooks was the third attorney appointed to handle J.T.'s case, and the trial had already been adjourned on four prior occasions. Additionally, J.T. failed to provide any proof that Tishberg was willing to accept his case should Attorney Brooks be allowed to withdraw. As noted above, when the circuit court asked J.T. if he retained Tishberg, he merely told the circuit court that he had talked to Tishberg several times. Moreover, the circuit court specifically told J.T. that he was free to hire Tishberg, or any other attorney that he wanted, provided that attorney would be prepared to proceed with the trial on its scheduled date. J.T. responded that he wanted to talk further with Attorney Brooks. J.T. never raised the issue again, and Attorney Brooks continued to represent him.

¶32 Indeed, in looking to *Phifer*, the court recognized that the defendant's "right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice." *Id.* at 30. This court, therefore, fails to see how *Phifer* requires the

conclusion that J.T. was denied his statutory right to counsel of his choosing in his TPR proceeding.

## CONCLUSION

¶33    In sum, this court concludes that J.T. has failed to demonstrate that he is entitled to withdraw his no contest plea on the basis that it was not knowingly, intelligently, and voluntarily entered or on the basis that he received ineffective assistance of counsel when he decided to enter his no contest plea. This court further concludes that the circuit court did not violate J.T.'s right to counsel of his own choosing. The order of the postdisposition court denying J.T.'s motion is accordingly affirmed.

*By the Court.*—Order affirmed.

This order will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.