VIGIL, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–602–CR.  Argued October 7, 1976.—*
*Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 378.)

For the plaintiff in error there was a brief by *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender, and oral argument by *Mr. Schairer.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   On February 11, 1975 the plaintiff in error (hereinafter defendant) was convicted in a trial before the court of violation of secs. 553.21(2), and 553.52(1), Stats. 1973 which are part of the Wisconsin Franchise Investment Law.[1]

[1] "553.21   *Registration requirement.*

"...

"(2) It is unlawful for any franchisor whose franchises are registered under this chapter, or any person in control of or controlled by or under common control with the franchisor, to offer or sell any of the registered franchises in this state in violation of this chapter or any rule under this chapter, or of any order under this chapter of which he has notice, or if the registration statement relating to the franchise, as of the date of the offer or sale, is incomplete in any material respect or contains any statement which is false or misleading with respect to any material fact. Any person acting under an order or rule under this chapter

Sentence was withheld and the defendant was placed on probation for three years and ordered to pay restitution to the alleged victim. The trial court denied post-conviction relief under sec. 974.06, Stats. Writs of error were issued by this court to review the judgment of conviction and the order denying post-conviction relief.

The principal questions on appeal are whether the evidence at the preliminary hearing was sufficient to bind the defendant over for trial; whether sec. 553.21 (2) is unconstitutionally vague and overbroad; whether the defendant was denied due process of law by the trial court's refusal to grant a continuance to obtain private counsel; whether the trial court properly convicted the defendant notwithstanding its failure to use the word "guilty" in its finding of violation of the statute from the bench; and whether the evidence was sufficient to sustain the conviction of guilt.

## FACTS

On July 1, 1974, the defendant was charged in a complaint of being "a person in control of a franchisor" who willfully sold a registered franchise in violation of an order of registration issued by the Commissioner

---

containing any terms or conditions shall be deemed to have accepted and waived all objections to such terms and conditions."

"553.52 *Criminal penalties.* (1) Any person who wilfully violates any provision of this chapter except s. 553.41(1), or any rule under this chapter, or any order of which he has notice, or who violates s. 553.41(1) knowing or having reasonable cause to believe either that the statement made was false or misleading in any material respect or that the failure to report a material event under s. 553.31(1) was false or misleading in any material respect, may be fined not more than $5,000 or imprisoned not more than 5 years or both. Each of the acts specified shall constitute a separate offense and a prosecution or conviction for any one of such offenses shall not bar prosecution or conviction for any other offense. No indictment or information may be returned under this chapter more than 6 years after the alleged violation."

of Securities pursuant to sec. 553.27(2)[2] Stats. The order required the defendant to deposit proceeds from the sale of franchises in an escrow account within forty-eight hours of their receipt. Violation of the order is a felony under sec. 553.52(1). At the preliminary hearing the court refused to permit the defendant to call a witness the defense claimed would rebut the testimony of a state's witness. An offer of proof was made to this effect. The defendant was bound over and pleaded not guilty to the information on August 28, 1974. Defense requests for a continuance to retain private counsel to replace the Legal Aid attorney furnished by the court were denied.

The defendant organized the Wisconsin Private Carriers Corporation (WPCC) the purpose of which was to distribute advertising door-to-door through a network of franchised dealerships each of which was to contain ten routes. A dealership cost $10,000 and a route cost $1,000. Income was to be generated by the sale of both advertising and dealerships. In March, 1973 WPCC applied to the Wisconsin Commissioner of Securities to obtain an order of registration permitting the corporation to sell dealerships. An order was issued effective April 17, 1973 and contained four conditions, one of which was that all franchise fees and other consideration obtained in connection with the sale of franchises were to be

---

[2] "553.27 *General registration provisions.* . . . (2) If the commissioner finds that the applicant has failed to demonstrate that adequate financial arrangements have been made to fulfill obligations to provide real estate, improvements, equipment, inventory, training or other items included in the offering, the commissioner may by rule or order require the escrow of franchise fees and other funds paid by the franchisee or subfranchisor until no later than the time of opening of the franchise business, or, at the option of the franchisor, the furnishing of a surety bond as provided by rule of the commissioner, if he finds that such requirement is necessary and appropriate to protect prospective franchisees or subfranchisors."

put in escrow within forty-eight hours of receipt and held until ordered released by the commissioner. An escrow account was established April 16, 1973 between the defendant as president of WPCC and Midland National Bank in Milwaukee. Neither deposits nor withdrawals were ever made. WPCC had difficulty borrowing money. An application for a Small Business Administration loan was denied. On May 12, 1973 the defendant resigned his position as president of the corporation and in addition gave up his stock for $6,000. This netted out to $4,702 after deduction of amounts he owed to the corporation. The defendant remained active in the corporation's affairs. On May 12 the defendant entered into an agreement with the corporation in which he was made exclusive sales agent for the corporation's franchises, doing business as "Barterer's Ltd." WPCC elected Mrs. Blanca Cardona president. She was the state's principal witness against the defendant.

Mrs. Cardona testified that after the defendant's resignation as president of WPCC, he continued to run the corporation in all respects other than title. More specifically, he solicited the sale of franchises and distributed the proceeds from one such sale. Prior to becoming president, Mrs. Cardona was the vice-president and route manager for the corporation. She acted as the defendant's interpreter with spanish-speaking people in Milwaukee. She had had one year of college education but no business experience. After she assumed formal control of the corporation, it was agreed that the defendant would teach her how to run the business. Everything that she did as president between mid-May and June 1 was done with the defendant. She made no business decisions without him. He continued to call and conduct business meetings and he also participated in the sale of a franchise to Angel Rosado. At the time of trial, Mr. Rosado, a factory worker with an eighth grade educa-

tion and the father of ten children, testified he first learned of WPCC through an insurance agent, Mr. Pedro Hernandez. Mr. Rosado's first brief contact with the defendant was at the office of the defendant's attorney, Mr. Roger Murphy. The meeting was brief because at that time the defendant was relinquishing the corporate reins at a board of directors meeting.

About June 1, 1973, Mrs. Cardona and the defendant went to Mr. Rosado's house to explain the WPCC prospectus. Mrs. Cardona functioned mainly as an interpreter. The defendant explained the franchise and "how good it was," according to Mr. Rosado's testimony, given through a court interpreter, because Mr. Rosado spoke Spanish. Mr. Rosado agreed to buy a franchise. Mrs. Cardona and the defendant returned to the Rosado home the next day to get two cashier's checks totaling $2,500 as a down payment on a franchise. This was the first cash received for a dealership by WPCC. The defendant wrote out the receipt which Mrs. Cardona signed and it was given to Mr. Rosado. The checks were handed to Mrs. Cardona but by the time she returned to the car with the defendant, he had taken possession of the checks.

The defendant testified that he and Mrs. Cardona then proceeded directly to attorney Murphy's office and were told by attorney Murphy that the money must be escrowed if it was for sale of a franchise. There was disagreement as to what occurred following this meeting. The defendant testified that he did not deposit the checks in the escrow account because Mrs. Cardona and Mr. Hernandez, the insurance broker, advised him that Mr. Rosado had changed his mind and now wished to become a stockholder in WPCC rather than a franchise holder. Mr. Hernandez did not testify at the trial. Mrs. Cardona and Mr. Rosado testified that no such conversation ever took place.

The defendant and Mrs. Cardona then spent about a week visiting various banks, showing them the Rosado checks in an attempt to obtain loans. Later the checks were deposited in the regular WPCC checking account. The defendant was still authorized to draw on that account. Some money was drawn by the defendant to pay corporate expenses. The defendant also made disbursements from the corporate funds on his own behalf alleging them to be money owed to him by the corporation.[3]

## SUFFICIENCY OF EVIDENCE AT PRELIMINARY HEARING

The state contends that questions concerning sufficiency of the evidence of the preliminary hearing were waived by the failure to challenge such sufficiency prior to entering a plea to the information.[4] The information was filed October 26, 1974 and a not guilty plea was entered on August 28, 1974. A motion to dismiss was filed September 6, 1974 and was not argued until the day the trial commenced, February 10, 1975, when it was argued on its merits and denied by the trial court.[5] Because the trial court considered the motion, which it

---

[3] The defendant wrote a check for $1,573.56 to cover an insufficiently funded check for which he was being prosecuted in Wauwautosa.

[4] *Wold v. State,* 57 Wis.2d 344, 346, 204 N.W.2d 482 (1973).

[5] "971.31 *Motions before trial.* . . . (2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. The motion to suppress evidence shall be so entertained with waiver of jeopardy when it appears that the defendant is surprised by the state's possession of such evidence."

could do under sec. 971.31(2), Stats., we may review the finding. We hold the trial court was correct in its conclusion that there was sufficient evidence to warrant the bindover.

The defendant argues that the state failed to show that the defendant was in control of the corporation, that a sale of a franchise was involved or that the defendant was responsible for escrowing the funds after he resigned his formal position with WPCC.

A preliminary hearing must establish to a reasonable probability that a crime has been committed and that the defendant had probably committed it.[6] Defendant argues that there is no showing that he committed a crime. The crime charged here is a felony punishable by a fine of not more than $5,000 or imprisonment of not more than five years or both. The conduct proscribed is offering to sell or selling any registered franchise in violation of the statute or a rule or order under that statute of which a defendant has notice. It covers, "any franchisor whose franchises are registered under this chapter, or any person in control of . . . the franchisor . . . ." The Commissioner of Securities is specifically empowered under sec. 553.27(2) to order the escrow of franchise fees and other funds paid by the franchisee. "Order" is defined in Sec. 553.03(9).[7]

A. *Defendant Was in Control of the Franchisor*

At the time of the alleged offense, the defendant was neither an officer nor a director of the company. The

---

[6] *Taylor v. State*, 55 Wis.2d 168, 173, 197 N.W.2d 805 (1972).

[7] "(9) 'Order' means every direction or determination of the commissioner designated an order and made in writing over the signature and seal of the commissioner, except a rule as defined under s. 227.01."

definition of a "person in control" of a franchisor has not been previously considered by this court. If the statutory language is unambiguous, the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning. The popular or reasonable import of words should be given effect, if possible.[8]

It is significant that the class of persons subject to the legislative proscription is not confined to the franchisor alone. Any franchisor or any person in control of the franchisor is subject to sec. 553.21(2). The criminal penalties of sec. 553.52(1) apply to any person who violates the chapter or any rule made under it or any order of which he had notice. It is not limited to one designated as a "franchisor". It is clear that the legislature intended that the statute cover those involved with the franchise and not merely the one designated as the licensed franchisor. The Legislature's declaration of intent is found in C. 241, Laws of 1971 p. 747, which reads in part:

"Wisconsin franchises have suffered substantial losses where the franchisor *or his representative* has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between the franchisor and franchisee and the prior business experience of the franchisor.

"(2) . . . Further it is the intent of this act to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promise would not be fulfilled, and to protect the franchisee." (Emphasis supplied.)

At the preliminary hearing, the evidence was quite clear that the defendant was in fact in control of this corporation, if control is given a plain meaning. The hearing also established that the Commissioner of Securi-

---

[8] *State ex rel. Milwaukee County v. WCCJ*, 73 Wis.2d 237, 241, 242, 243 N.W.2d 485 (1976).

ties ordered the creation of an escrow account to protect the franchisee pursuant to the authority given to the Commissioner by the statute. At the time that order was issued, the defendant was the president of the franchisor and in addition, he admitted actual knowledge of that escrow order. This was established at the preliminary hearing by introduction by the defendant's former testimony at a proceeding held by the office of the Commissioner of Securities and was verified at the trial by the defendant's testimony there. Subsequently the defendant relinquished his former position in the company but continued to solicit franchises, call meetings, tell the corporate president what to do and write checks on the company checking account. His activities are of the type which are within the purview of the statute.

### B. *Sale of Franchise Was Adequately Established*

The defendant argues that the state failed to establish that the sale of a dealership was involved. Mrs. Cardona testified at the preliminary hearing that she and Mr. Vigil were attempting to sell a dealership to Mr. Rosado and that when Mr. Rosado paid $2,500, the defendant knew that the payment was for a dealership. The defendant argues that this is inadequate to establish that a "sale" took place under sec. 553.03(11)(a).[9] The statute encompasses "disposition of" a franchise and not just a contract to sell, within the definition of "sale." Testimony established that money actually changed hands for a dealership and the receipt given to Mr. Rosado was admitted into evidence. We hold that the evidence at the preliminary clearly established that a sale had taken place.

---

[9] "(11)(a) 'Sale' or 'sell' includes every contract or agreement of sale of, contract to sell, or disposition of, a franchise or interest in a franchise for value."

## C. The Defendant Was Subject to the Order of the Commissioner

Defendant argues that there is no showing that he was responsible for placing funds in escrow after he resigned as an officer and relinquished his stock in WPCC. It is clear that he had actual knowledge of the order. The statute prohibits "any person" from willfully violating an order of which he has notice. Thus, he was under a duty to escrow the funds he received from Mr. Rosado. It is undisputed that he failed to escrow those sums.

## FAILURE TO ALLOW DEFENDANT TO CALL A WITNESS AT THE PRELIMINARY HEARING WAS NOT ERROR.

Defendant asserts that it was error when the county court at the preliminary hearing refused to permit the defendant to call Mr. Rosado as a witness. An offer of proof was made which showed that the purpose was to refute the testimony of Mrs. Cardona. The object was to show that rather than a sale of a franchise, a sale of stock had been made. The court refused to permit the witness to testify. The fact is that at the trial Mr. Rosado corroborated Mrs. Cardona's testimony that stock was never even discussed. Thus, the defendant was certainly not prejudiced by failure to call Mr. Rosado at the preliminary. In addition, the purpose of the preliminary is not to make a final judgment on the credibility of Mrs. Cardona; the court's role was simply to ascertain the plausibility of her story and whether, if believed, it would support a bindover. *Wilson v. State*, 59 Wis.2d 269, 294, 295, 208 N.W.2d 134 (1973). The judge at the preliminary hearing properly refused to permit the testimony pursuant to the offer of proof which the defendant made.

## SEC. 553.21(2) IS NEITHER VAGUE NOR OVER-BROAD.

The question whether Sec. 553.21(2) is vague or over-broad was not raised at trial or before trial and under Sec. 971.31(2) the defendant has waived this challenge. However, this court may consider an issue for the first time on appeal as a matter of judicial administration and policy. *Terpstra v. Soiltest,* 63 Wis.2d 585, 593, 218 N.W.2d 129 (1974). We consider it because it has not previously been raised with respect to this statute, which took effect in 1972. The defendant does not say in what respect this statute is overbroad, that is, in what manner its sweep is so broad that its sanctions apply to conduct protected by the Constitution.[10] Therefore, the argument on overbreadth must fail.

This court has stated that whether a statute is unconstitutionally vague depends on ·

". . . whether the statute taken as a whole is sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise the judge and jury of standards for the determination of guilt (citation omitted).
". . . If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional." *Butala v. State,* 71 Wis.2d 569, 573, 574, 239 N.W.2d 32 (1976).

The defendant may not hypothesize fact situations which might raise a question as to the challenged statute's applicability where the conduct charged is so obviously within the zone of prohibited conduct that no reasonable person can doubt its criminal nature. *Butala v. State, supra.*

---

[10] *State v. Mahaney,* 55 Wis.2d 443, 448, 198 N.W.2d 373 (1972).

The defendant's argument is that the statutory language does not specify what "control" means and that it is not clearly spelled out what persons would be covered. Neither does it indicate whether the act proscribed is the sale of the franchise or violation of a registration order.

The construction of the word "control" has earlier been discussed in this opinion. It is a word with a plain meaning and it is clear that the defendant had control of this corporation as far as its operations were concerned. The defendant personally received an order from the Commissioner of Securities that the proceeds from the sale of a franchise be escrowed within forty-eight hours. The obvious purpose was to protect a franchisee. Persons of common intelligence would understand in this context that a person in control of the franchisor encompasses a person who, though formally without corporate position, dictates corporate affairs, solicits the purchase of franchises, disburses the corporate money and in every manner is in a position to do the harm to the franchisee which the statute was intended to prevent. The contention that the statute does not indicate whether the proscribed act is the sale itself or the violation of the order attempts to create ambiguity where none exists. The violation is the offer or sale in violation of the order. The order sets a standard of conduct when an offer or a sale takes place. The evidence shows it was violated here.

## DEFENDANT WAS NOT DENIED DUE PROCESS OF LAW BECAUSE OF TRIAL COURT'S REFUSAL TO GRANT A CONTINUANCE TO RETAIN NEW COUNSEL.

On February 10, 1975, the day of trial, the defendant personally and through his attorney stated that he now had some money and requested a continuance to obtain

private counsel. At that time he was represented by an attorney with the Legal Aid Society, having been found indigent. The motion was denied. The defendant asserts as separate errors the failure to grant the continuance and the denial of counsel of his choice.

Nothing in the record indicates that private counsel had actually been retained. Between the arraignment on August 28, 1974 and the date of trial, four continuances had been granted. The third one was at the request of defense counsel and the fourth was at the request of the state and the defendant raised no objection. There is no allegation here that the counsel who was appointed to represent defendant at his trial because of defendant's indigency was ineffective. On his appeal the defendant has not retained private counsel but is represented by the office of the State Public Defender.

An indigent does not have the right to counsel of his choice.[11] If he was not in fact indigent and was prepared to hire private counsel, his request to do so at the time the case was actually called for trial and the matter was ready to proceed, came too late and there was no abuse of discretion on the part of the trial court in refusing this request. The case of *State v. Johnson,* 50 Wis.2d 280, 283, 184 N.W.2d 107 (1971) relied on by the defendant is distinguishable. In that case the order denying post conviction relief was reversed because the juvenile defendant had no counsel at all during trial. The court pointed out, however, "An indigent defendant is entitled to competent counsel, but not necessarily counsel of his own choosing."

In the case before us, the defendant requested a continuance on the day of trial, "now that I have been able to borrow some money, to go out and get private

---

[11] *State v. Scarbrough,* 55 Wis.2d 181, 186, 197 N.W.2d 790 (1972) and cases cited therein; *U. S. v. Hampton* (7th Cir. 1972), 457 F.2d 299, 301 *cert. den.* 409 U.S. 856.

counsel. . ." At the time the motion was made, the jury was ready to be called, the state was ready to proceed and the matter had been scheduled for trial about two months. The defendant did not indicate that he had an attorney ready to proceed but asked for a continuance in order to get counsel. We hold there was no abuse of the trial court's discretion in refusing this request for a continuance. In the case of *Mulkovich v. State*, 73 Wis.2d 464, 243 N.W.2d 198 (1976), this court held it was error at the time of sentencing to refuse to permit a defendant to substitute counsel of his own choice present in court at the time of sentencing; the sentencing judge had insisted that the counsel who had tried the case be the one to represent the defendant at the time of the sentencing. In an opinion by Justice Heffernan this court said at page 474:

"In the usual case, due process is denied when counsel is imposed upon a defendant against his will. . . . The right to be represented by counsel of one's own choosing applies to sentencing as well as to trial. . . .

"This right, however, is not an absolute right and may be refused where the court properly exercises its discretion. *Phifer v. State* (1974) 64 Wis.2d 24, 218 N.W.2d 354, stated the appropriate standards for the exercise of judicial discretion when the choice of defendant's counsel is called into question. When there is no evidence that the proposed counsel is inadequate and when there is no evidence that a change of counsel is made for the purpose of delay, it is an abuse of discretion to refuse a request for retained counsel or for substitution of counsel.

"We therefore conclude that the trial judge abused his discretion when he refused to permit the defendant to be represented by competent substitute counsel at a time when such substitution would not have interfered with the orderly procedures of the court."

However, in that case, substitute counsel was present in court ready to proceed. The court in *Mulkovich* held it was not error when the trial court refused to allow

substitution of counsel in a situation similar to the one before us. This court said at pages 475, 476:

". . . the trial judge did not err in refusing a substitution of attorney immediately before the impanelling of the jury on January 2, 1974. Although counsel and witnesses were present, and the defendant had ample opportunity before that date to have asked for substitution of counsel, no request for a trial attorney was made until the eleventh hour. While the accused has the right to select his own counsel, such choice 'cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice.' *Phifer v. State, supra,* page 30.

". . .

"In the instant case, when the defendant requested the continuance, numerous witnesses were present in court and the jury panel was awaiting call. The trial date had been set for more than two months. Under the circumstances here, the trial judge properly exercised his discretion in refusing the last minute substitution when the request reasonably could have been made at a far earlier date. . ."

We hold that in the case at bar the refusal by the trial judge to grant a continuance was not error.

## THE DEFENDANT WAS FOUND GUILTY OF THE OFFENSE CHARGED.

The trial court did not use the word "guilty" in the findings that it announced from the bench. The colloquy between the judge and the prosecutor was as follows.

"THE COURT: What is the position of the State?

"MR. JACOBS: Yes, your Honor, I don't know if there's been a formal finding of guilt.

"THE COURT: I found beyond a reasonable doubt that he willfully circumvented the franchise law and special regulations set forth in accordance with that law with the Commissioner of Securities for the State of

Wisconsin, and thereby violated Section 553.21 of the Statutes.

"MR. JACOBS: I'm at the point, if the Court doesn't say he's guilty it doesn't register.

"THE COURT: This is a business kind of a thing. It's a different kind of a finding that the Court has to make."

However, the written judgment of conviction signed by the judge contains a written statement that there was a finding of guilty and contains the phrase, "it is adjudged that the defendant is guilty as convicted." It is therefore clear that the trial court did in fact find and adjudge the defendant guilty of the crime charged.

## THE EVIDENCE WAS SUFFICIENT TO CONVICT THE DEFENDANT.

A challenge to the adequacy of the information raised in the defendant's brief was withdrawn at the time of oral argument. All that remains for discussion is the sufficiency of the evidence.

The state was required to prove that the defendant was a person in control of a franchisor and that he had notice of and willfully violated the order to escrow within forty-eight hours the proceeds from the sale of a franchise. Here, the trial court as the trier of fact acting reasonably had ample evidence to be convinced of guilt beyond a reasonable doubt.[12] The evidence was sufficient to show that the defendant had knowledge of the order by the Commissioner, that he solicited the sale of a franchise and received money from the sale, that he knew that the sale proceeds were to be escrowed according to the order and that he willfully and intentionally failed to place the checks received from Mr. Rosado in the escrow account.

[12] *Garcia v. State*, 73 Wis.2d 174, 182, 242 N.W.2d 919 (1976).

The evidence was sufficient for the trial court to conclude that the defendant controlled the franchisor in fact.

*By the Court.*—Judgment and order affirmed.