JAMES A. WENDLAND, District Attorney Dunn County
You have requested my opinion on several questions "related to the elements of proof required to obtain a criminal conviction under" sec. 30.195, Stats., particularly sub. (1) of the statute, which provides:
 "Permit required. No person shall change the course of or straighten a navigable stream without a permit therefor having been granted pursuant to this section or without otherwise being expressly authorized by statute to do so. Any person violating this section shall be fined not more than $1,000 or imprisoned not more than 6 months, or both."
First, you ask:
 "Does the state have the burden of coming forward and affirmatively showing that there was not a permit granted for the changing of the course of the stream in question or does the defendant have the duty to show by an affirmative defense that he had a permit?"
lt is my opinion the state has the burden of proving no permit was granted.
Traditionally, "the state always bears the burden of proof in a criminal trial, and any such shift renders the trial fundamentally unfair." Johnson v. Wright, 509 F.2d 828, 831 (5th Cir. 1975). In state criminal prosecutions, "the Due Process Clause [U.S. Const. *Page 266 
amend. XIV, sec. 1] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Inre Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970). See also, 22A C.J.S. Criminal Law, sec. 566, p. 308 (1961). Even where "an offense is grounded on a negative, or when the negative is an essential element of the crime, the burden is on the state to prove it, at least by a prima facie showing." 22A C.J.S. Criminallaw, supra, at 311.
The United States Supreme Court recognized the burden of proving negatives "is often a heavy burden for the prosecution to satisfy. . . . But this is the traditional burden which our system of criminal justice deems essential . . . . Nor is the requirement of proving a negative unique in our system of criminal jurisprudence." Mullaney v. Wilbur, 421 U.S. 684,701-702, 95 S.Ct. 1881 (1975) [footnote omitted]. Thus, under the traditional rule, the state would have to prove the accused acted "without a permit having been granted" in order to obtain a conviction under sec. 30.195 (1), Stats.
To the traditional rule the Wisconsin Supreme Court recognizes one well established exception. Citing Kreutzer v. Westfahl,187 Wis. 463, 478, 204 N.W.2d 595 (1925), the court said:
 "'It is undoubtedly the general rule that the state must prove all the essential facts entering into the description of the offense. But it has been held in many cases that when a negation of a fact lies peculiarly within the knowledge of the defendant it is incumbent on him to establish that fact . . . ."' State v. Williamson, 58 Wis.2d 514, 524, 206 N.W.2d 613 (1973).
In Williamson the defendant was convicted under sec. 941.23 (1), Stats., which provides:
 "Any person except a peace officer who goes armed with a concealed and dangerous weapon shall be imprisoned not more than one year in the county jail."
The defendant argued it was incumbent upon the state to establish that the defendant was not a "peace officer." Recognizing the difficult burden on the state to prove defendant was not one of thousands of "peace officers" throughout the state the court held the burden of proving whether defendant was a peace officer under the criminal *Page 267 
statute fell on the defendant as being peculiarly within his knowledge. 58 Wis.2d at 524.
In State v. McFarren, 62 Wis.2d 492, 215 N.W.2d 459 (1974), the Wisconsin Supreme Court faced a similar issue to the one we now face. In McFarren the state sought to enforce an order of the Department of Natural Resources pursuant to sec. 30.03 (4), Stats., requiring respondent to remove a fill he allegedly deposited on the bed of a lake. Respondent was alleged to have violated sec. 30.12 (1), Stats., which provides:
 "General prohibition. Unless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:
 "(a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or
 "(b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line."
The controlling issue before the court was "on whom does the burden of proof lie in establishing whether or not a bulkhead line exists." 62 Wis.2d at 499.
In addressing the issue, the court looked to five factors inMcFarren as determinative of the burden. The first factor is the natural tendency to place the burdens on the party desiring change and who should be expected to bear the risk of failure of proof or persuasion. Second, are "special policy considerations," such as those disfavoring certain defenses. Third, is "convenience," where the facts with regard to an issue lie peculiarly within the knowledge of a party, such as in criminal cases where the accused has the burden of proving that he possesses a license. Fourth, is "fairness." McFarren includes within this area proof of exceptions and proof of negatives. Generally, an accused has the burden of proving, as a matter of defense, that he is within an exception in a statute preventing an act otherwise included in the statute from being a crime. The prosecution would owe no duty to prove an accused is not within the exception. The same rule applies to proof of negatives. The party *Page 268 
asserting the negative has the burden to prove it unless the facts are peculiarly within the other party's knowledge. Fifth, is the matter of "judicial estimate of probabilities." The risk of failure of proof may be placed on the party who contends that the more unusual event has occurred. State v. McFarren, supra,62 Wis.2d at 499-503.
Application of the first, third and fourth factors in McFarren
tended to place the burden of proving nonexistence of the bulkhead line on the state. The second did not apply and the fifth tended toward placing the burden on respondent. Id. The court concluded:
 ". . . as the burden of proof should be on the party desiring the change except where it may be much easier for the other party to prove the fact in question, the burden of proving the nonexistence of a bulkhead line . . . should be left on the state." Id., 62 Wis.2d at 503.
Applying the McFarren factors to our own case in point: first, the "natural tendency" of placing the burden lies with the state.
Second, I see no special policy considerations for placing the burden on the accused.
Third, although it would appear more "fair" as between the parties to place the burden on the accused to prove he holds a sec. 30.195 permit or "license," in my opinion this factor does not work to put the burden on the defendant in light of the relative case by which the state may meet its prima facie burden of proving the non-issuance of a permit to the accused. Section889.09 (2), Stats., provides:
 "The certificate of the legal custodian of the records of any public licensing officer, board or body that he has made diligent examination of the files and records of his office and that she can find no record of a license issued to a named person or that none has been issued to such person, specifying the kind of license in question, shall be evidence that none has been issued."
Because in a criminal case, the state may rest its case upon evidence sufficient to make out a prima facie case, 22A C.J.S.Criminal Law, sec. 571, fn. 18.6 (1977 Pocket Part), proof that no permit was issued to the accused pursuant to see. 30.195, Stats., is a matter of merely evidencing a certificate from the Department of Natural Resources custodian of records pursuant to sec. 889.09 (2), Stats. See McFarren, supra, 62 Wis.2d at 501. *Page 269 
The fourth consideration includes the factors of "proof of exceptions" and "proof of negatives." As the supreme court concluded that part of see. 30.12, Stats., dealing with bulkhead lines is not phrased as an exception but rather as part of the description of the violation, McFarren, supra, 62 Wis.2d at 502, I too must conclude that part of sec. 30.195 (1), Stats., dealing with permits is not an exception, but an element of the violation. Even if the language was an exception, I conclude the burden of proving that no permit was granted to an accused violator of sec. 30.195 (1) is not so "difficult to meet" by the state, under Williamson, supra, 58 Wis.2d at 524, to warrant placing the burden on defendant. See sec. 889.09 (2), Stats.
With respect to the fifth "judicial estimate of probabilities" factor, I do not know how frequently the Department of Natural Resources grants permits under sec. 30.195, Stats., and like the court in McFarren, supra, 62 Wis.2d at 503, agree that this factor, if it is to be considered at all, might tend to favor placing the burden on the defendant.
I conclude the burden of proof lies on the state to show no permit was issued to an alleged violator of sec. 30.195 (1), Stats. Especially in light of the provisions of sec. 889.09 (2), Stats., it is not so much easier for the defendant to prove he has a permit than for the state to prove he has none to justify placing the burden on the defendant. State v. McFarren, supra;State v. Williamson, supra. I "discern no unique hardship on the prosecution that would justify requiring the defendant to carry the burden of proving a fact so critical to criminal culpability." Mullaney v. Wilbur, supra, 421 U.S. at 702.
Your second question is:
 "Does the state have to prove that the changed or new course of the stream is also navigable in addition to proving that the original course of the stream was navigable?"
It is my opinion the state need not prove navigability of the changed portion of a stream. The pertinent part of sec. 30.195
(1), Stats., provides:
 "Permit required. No person shall change the course of or straighten a navigable stream without a permit therefor having *Page 270 
been granted pursuant to this section or without otherwise being expressly authorized by statute to do so. . . ."
I am of the opinion the statutory language in sec. 30.195 (1), Stats., is plainly clear and unambiguous on its face as to what part of the stream in question must be shown to be navigable. It is not an element of the crime of illegally changing the course of a stream that the changed portion of the stream be navigable. It is an element for the state to prove that the stream that was changed was a navigable stream at the time of the change under the guidelines in De Gaynor [DeGayner] Co. v. DNR, 70 Wis.2d 936,236 N.W.2d 217 (1975).
If the statute "standing by itself, without resort to rules of interpretation, conveys a definite and clear impression when applied to the subject matter regulated thereby, this is the best evidence of the meaning of the statute." Nordean v. MinneapolisSt. P. S.S.M.R. Co., 148 Wis. 627, 634, 135 N.W. 150 (1912). As in State ex rel. Milwaukee County v. WCCJ, 73 Wis.2d 237, 241,243 N.W.2d 485 (1976), "[t]he language of this statute is clear and unambiguous. When the statutory language is clear and unambiguous no judicial rules of construction are permitted, and [we] must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning." See also Vigilv. State, 76 Wis.2d 133, 142, 250 N.W.2d 378 (1977).
I am convinced the language of sec. 30.195 (1), Stats., is clear and that the ordinary and accepted meaning of the statute does not require a showing that the changed portion of an altered stream is navigable.
Your third question is:
 "If it is required that the new or changed course of the stream be proven to be navigable, at what point in time does the statute of limitations on this misdemeanor, which is three years, begin to run? Does the act that eventually causes the new or changed course to become navigable have to occur within the three years proceeding the date the new or changed course becomes navigable'?"
Because the state need not prove navigability of the new or changed courses of the stream, your third question is irrelevant.
 Your last question is: *Page 271 
 "[W]hether or not the state is required to prove specific intent, that is, must the state prove that the person who acted such as to change the course of the navigable stream intend at the time he acted that the result would be to change the course of a navigable stream?"
My opinion is the state need not prove that the person who changed the course of a stream specifically intended to change the stream course or had reason to believe he was violating sec.30.195, Stats.
Although "the element of scienter is the rule rather than the exception in our criminal jurisprudence," State v. Alfonsi,33 Wis.2d 469, 476, 147 N.W.2d 550 (1967), "[a] legislature may create a crime which requires no specific intent," State v.Gould, 56 Wis.2d 808, 810, 202 N.W.2d 903 (1973). In fact, the Wisconsin Supreme Court "has long recognized the existence of and, as a general matter, the propriety of legislative definitions of crime that omit any element respecting mental state beyond the requirement that the accused intended to do the act which is made a crime." State v. Collova, 79 Wis.2d 473, 480,255 N.W.2d 581 (1977). "Wisconsin has abolished all common-law crimes, and the element of intent of the statutory crimes is only necessary when specified by statute." Flowers v. State, 43 Wis.2d 352,360, 168 N.W.2d 843 (1969).
In State v. Dried Milk Products Co-op., 16 Wis.2d 357,114 N.W.2d 413 (1962), the supreme court upheld the constitutionality of sec. 348.15 (2)(c), Stats., which imposed a $400 fine on the corporate owner of a truck which had been loaded in excess of axle weight limitations, in spite of the absence of any actual knowledge of the violation on the owner's part. The court described the purpose of such enactments as being the enforcement of a high standard of care:
 "This section is part of a welfare statute which generally creates a crime malum prohibitum for the doing of an act without requirement of intent. . . .
 "Statutes of this nature, imposing criminal penalty irrespective of any intent to violate them, have for their purpose the requirement of a degree of diligence for the protection of the public which shall render a violation thereof impossible. . . . These statutes are examples of situations where a person must at his peril see to it that the regulations are not violated by his *Page 272 
acts or by the acts of another acting in his behalf." Id, 16 Wis.2d at 359, 362-363.
See also, West Allis v. Megna, 26 Wis.2d 545, 548, 133 N.W.2d 252
(1965), where the court held proof of knowledge on the part of a tavern keeper that a patron is actually under age is not required in order to obtain a conviction under sec. 176.32 (1), Stats. That statute imposes "strict liability on tavern keepers for permitting minors to be on the premises," and subjects violators to fine or imprisonment. Id., 26 Wis.2d at 548.
Recently, however, the Wisconsin Supreme Court construed a socalled "regulatory criminal statute" holding that the state must prove the defendant had cause to believe he was violating the statute under which he was charged. In State v. Collova,supra, the defendant was convicted of operating a motor vehicle after revocation of his operating privilege in violation of sec.343.44 (1), Stats. Under the statute "[r]efusal to accept or failure to receive an order of revocation or suspension mailed by first class mail to such person's last-known address shall not be a defense." Sec. 343.44 (2), Stats. "If convicted, a defendantmust be sentenced to at least ten days in county jail and may be sentenced to as long as a one-year term; the defendant may, in addition, be fined from $100 to $400." Collova, supra,79 Wis.2d at 485-486 (Emphasis in original.)
The court in Collova rejected the defendant's contention that nonreceipt of a notice of revocation is a complete defense to the crime. The court held the Legislature intended the state must prove as an element of the offense the defendant had cause to believe his license might be revoked or suspended, id. at 488, even though "the definition of the offense here involved does not contain any express words requiring or negativing any particular mental element, or requiring or negativing any specific state of mind." Id. at 480.
The court considered several factors for "determining where the Legislature intended to draw the line between offenses which do and do not require scienter." Id. at 482. The court observed:
 "These regulatory statutes are concerned primarily with the protection of social and public interests, with the prevention of direct and widespread social injury. They are more concerned with the injurious conduct than with the question of individual guilt or moral culpability. The penalties imposed are generally *Page 273 
light. The usual rationale for strict liability statutes is that the public interest is so great as to warrant the imposition of an absolute standard of care — the defendant can have no excuse for disobeying the law. Because of the multitude of cases arising under these regulatory statutes, there is a need for quick, simple trials unhindered by examinations of the subjective intent of each defendant." Id.
Although several of these factors were present in the case before it, which suggested scienter be disregarded. the court saw "the severe consequences attached to a violation of sec. 343.44, Stats., to be the dispositive factor here." Id. at 485. Noting the mandatory ten-day jail sentence without probation, accompanied by possible fines and mandatory revocation of a violator's driving privileges for one year, the court held, "We do not believe the legislature intended to impose such a severe penalty without some requirement of guilty knowledge as an element of the offense." Id. at 486. (Footnote omitted.)
Based on the facts presented in Collova it is my opinion the holding in that case does not apply to require the state to prove a defendant had specific intent to change the course of a stream under sec. 30.195 (1), Stats. In fact, the principles enunciated in Collova require a contrary conclusion.
The factors considered by the court in Collova point to the conclusion that scienter is not an element of an offense under sec. 30.195 (1), Stats. First, although substantial fines and imprisonment may be imposed for violation, sec. 30.195 (1), Stats., does not impose a mandatory jail term, "the dispositive factor" in Collova, supra, 79 Wis.2d at 485. Nor does the statute revoke for a mandatory term a privilege that is as usual and commonplace to a large segment of our society as driving an automobile. Id. at 484-485. Thus, on the inquiry "whether the statute appears on balance to be designed to punish wrongdoers or to implement a high standard of care on the part of the public,"id. at 486, I believe sec. 30.195 (1), Stats., is "more concerned with the injurious conduct than with the question of individual guilt or moral culpability." Id. at 482.
Several other factors are present in this matter that suggest scienter be disregarded. Section 30.195 (1), Stats., is obviously a police regulation designed to function with the rest of the navigable waters protection laws (chs. 30 and 31. Stats.) in regulating the *Page 274 
social order, and by actively protecting the public trust in those waters. See secs. 33.001, 144.26 (1), Stats.; Madison v.Tolzmann, 7 Wis.2d 570, 574, 97 N.W.2d 513 (1959); Milwaukee v.State, 193 Wis. 423, 449, 214 N.W. 820 (1927); In re CrawfordCounty L D District, 182 Wis. 404, 408, 196 N.W. 874 (1924). If the state were to lose effective control over the privilege of changing stream courses or conducting other activities affecting the nature and quality of the waters of the state, the rate of injury to those waters might very well rise. The seriousness of harm to public rights and interests resulting from unlicensed and unregulated activity in state waters is generally conceded.
Moreover, for the many cases arising under our navigable water protection statutes, there is a need for quick and simple trials unhindered by examinations of the subjective intent of the defendant. Collova, supra, 79 Wis.2d at 482. Protective regulation of our navigable waterways is not unknown to the public, and especially to those who seek to use them for private purposes. I am of the opinion that if sufficient care is exercised by those wishing to alter the character of a stream the proscribed conduct in sec. 30.195 (1)can be avoided in all but the exceptional instance. Id. at 485. "The persons to whom the regulations are directed are generally in a position to exercise such high degree of care; they will be encouraged to do so by the imposition of strict penal liability, and the penalties usually involved are such as to make the occasional punishment of one who has done everything that could have been done to avoid the violation a reasonable price to pay for the public benefit of the high standard of care that has been induced." Id.
Although in my opinion the state need not prove an accused had specific intent to change a navigable stream course or that he had reason to believe he was violating sec. 30.195 (1), Stats., the state of course must prove the accused intended to do the act which is made a crime. Collova. supra, 79 Wis.2d at 180. Speaking to another similarly worded regulatory criminal statute in ch. 30, Stats., the Wisconsin Supreme Court said of sec. 30.12, Stats., although "this statute no longer requires wilfulness in the deposit of deleterious substances into water and that the negligent deposit may bring a violator's conduct within the proscriptions of this statute," State v. Deetz, 66 Wis.2d 1, 23,224 N.W.2d 407 (1974), "[t]he provisions of sec. 30.12 show that, to be prohibited, there must be a *Page 275 
consciousness of depositing material in a navigable water . . . . [T]he statute was designed to prohibit only deliberate fills."Id. at 22. In Deetz, the supreme court drew the line of proscribed conduct in sec. 30.12, Stats., at direct actions of filling or depositing materials in navigable waters, while holding the Legislature did not intend to punish conduct that indirectly resulted in "silting caused by surface water runoff."Id. at 23-24.
While my opinion is that the state has to prove an intent to do the act that is made a crime by sec. 30.195 (1), Stats., I do not believe an extraordinary burden is placed on the state to obtain a conviction. State v. Could, supra, 56 Wis.2d at 813-814, is instructive:
 "A person need not foresee or intend the specific consequences of his act in order to possess the requisite criminal intent. . . . In addition, an accused is presumed to intend the natural and probable consequences of his acts voluntarily and knowingly performed. . . .
 ". . . The presumption is based upon moral certitude, i.e., the customary ways, actions, and intentions of mankind in given circumstances. Thus a person is presumed to intend the natural and probable consequences of his acts voluntarily and knowingly performed, whether they are of a criminal nature or not. The criminality of the act has nothing to do with the validity of the presumption, the basis upon which it rests, or its application." (Citations omitted.)
Thus, in order for the state to make a prima facie showing of the requisite intent for conviction under sec. 30.195 (1), Stats., the state need only prove the accused did the act of directly changing a stream course. "Of course, since the presumption is a working tool, evidence of a contrary intent may be introduced to rebut the presumption." Id. at 814. See also, Gibson v. State,55 Wis.2d 110, 115, 197 N.W.2d 813 (1972); Boyd v. State, 217 Wis. 149,163, 258 N.W. 330 (1935).
BCL:TD *Page 276