HERBERT J. GROVER, State Superintendent Department of PublicInstruction
You request my opinion on the following related questions:
1. Does the use by public schools of American Indian logos, mascots or nicknames, singly or in combination, come within the purview of section 118.13 of the Wisconsin statutes?
2. Is Wisconsin Administrative Code chapter PI 9 consistent with legislative intent?
The answer to both questions is yes.
Section 118.13 provides:
 Pupil discrimination prohibited. (1) No person may be denied admission to any public school or be denied participation in, be denied the benefits of or be discriminated against in any curricular, extracurricular, pupil services, recreational or other program or activity because of the person's sex, race, religion, national origin, ancestry, creed, pregnancy, marital or parental status, sexual orientation or physical, mental, emotional or learning disability.
The primary source for construction of a statute is the language of the statute itself. State v. Burkman, 96 Wis.2d 630,638, 292 N.W.2d 641 (1980). If the statutory language is unambiguous, one arrives at the intention of the Legislature by giving language its ordinary and accepted meaning. Vigil v.State, 76 Wis.2d 133, 142, 250 N.W.2d 378 (1977). Only where a statute is not clear on its face as to its meaning or application does one look to the legislative intent in construing *Page 322 
a statute. McLeod v. State, 85 Wis.2d 787, 792,271 N.W.2d 157 (Ct.App. 1978).
A statute is ambiguous if two or more reasonably well-informed persons could understand the language in different senses. Allenv. Juneau County, 98 Wis.2d 103, 108, 295 N.W.2d 218 (Ct.App. 1980). I believe that reasonably well-informed persons can differ over the definition of discrimination as applied to "any curricular, extracurricular, pupil services, recreational or other program or activity." The ultimate purpose of statutory construction is to give effect to the legislative intent. Madisonv. Southern Wis. R. Co., 156 Wis. 352, 360, 146 N.W. 492 (1914). Since there is no single document evidencing the legislative intent of the language of the statute, legislative intent must be construed from other actions of the Legislature. Pittman v.Lieffring, 59 Wis.2d 52, 62, 207 N.W.2d 610 (1973).
Under section 227.19, the Legislature may delegate rulemaking authority to an agency. Through section 118.13(3)(a)2. the Legislature gave the superintendent of public instruction the power to create rules to administer this anti-discrimination statute. Pursuant to its statutory authority, the Department of Public Instruction (Department) established Wisconsin Administrative Code chapter PI 9.
Wisconsin Administrative Code chapter PI 9 provides:
 "Discrimination" means any action, policy or practice, including bias, stereotyping and pupil harassment, which is detrimental to a person or group of persons and differentiates or distinguishes among persons, or which limits or denies a person or group of persons opportunities, privileges, roles or rewards based, in whole or in part, on sex, race, national origin, ancestry, creed, pregnancy, marital or parental status, sexual orientation or physical, mental, emotional or learning disability, or which perpetuates the effects of past discrimination. *Page 323 
Wis. Admin. Code § PI 9.02(5) (1986).
 "Pupil harassment" means behavior towards pupils based, in whole or in part, on sex, race, national origin, ancestry, creed, pregnancy, marital or parental status, sexual orientation or physical, mental, emotional or learning disability which substantially interferes with a pupil's school performance or creates an intimidating, hostile or offensive school environment.
Wis. Admin. Code § PI 9.02(9) (1986).
 "Stereotyping" means attributing behaviors, abilities, interests, values and roles to a person or group of persons on the basis, in whole or in part, of their sex, race, national origin, ancestry, creed, pregnancy, marital or parental status, sexual orientation or physical, mental, emotional or learning disability.
Wis. Admin. Code § PI 9.02(14) (1986).
To become effective, this rule had to go through an extensive legislative review process. The Department first sent its proposed rule to the Legislative Council. The Legislative Council subsequently issued a report which the Department forwarded to the Senate. The Senate Committee on Education and Governmental Operations reviewed the report and held a public hearing. No objections were made, and the Senate approved Wisconsin Administrative Code chapter PI 9. The Department also sent the report to the Assembly where it was reviewed by the Committee on Education. The committee held a public hearing and made modifications. The changes that resulted did not have the effect of excluding school mascots from the purview of this anti-discrimination rule (Wisconsin Legislative Council Memo, dated January 16, 1992). The Assembly took no further action and approved the rule. Therefore, the Legislature must have intended the statute to be at least as broad as the rule provides. *Page 324 
"`[W]hen the legislature charges an administrative agency to apply and enforce a particular statute . . . the agency's construction and interpretation of the statute are entitled to great weight and any rational basis will sustain its practical interpretations.'" William Wrigley, Jr. Co. v. DOR, 160 Wis.2d 53,69-70, 465 N.W.2d 800 (1991). Wisconsin Administrative Code chapter PI 9 should be given great weight, both because the Department has the express power to implement and administer section 118.13 and because the Department's definitions are unquestionably rational. In addition, this rule has been in effect for almost six years, and longstanding administrative construction of a statute is accorded great weight in determining legislative intent because the Legislature is presumed to have acquiesced in that construction if it has not amended the statute. Dairyland Harvestore v. DOR, 151 Wis.2d 799, 804,447 N.W.2d 56 (Ct.App. 1989).
Wisconsin Administrative Code chapter PI 9 is not ambiguous. The language is clear and direct; therefore, to interpret the rule we need only look at its ordinary meaning. Vigil v. State,76 Wis.2d at 142. Section 118.13 prohibits discrimination against a member of a protected class in a program or activity approved or sponsored by the school board. The rule defines discrimination as any action, policy or practice of a school that affects a person or a group of persons. This includes stereotyping and pupil harassment. The rule further defines stereotyping as attributing behavior, abilities, interests, values or roles to a protected class, and it defines pupil harassment as behavior toward a protected class which creates an intimidating, hostile or offensive school environment. In addition, such actions must be detrimental and perpetuate effects of past discrimination. Webster's New Collegiate Dictionary 310 (1977) defines detrimental as something "harmful" or "damaging."
In the application of this language to the question at hand, American Indians are a protected class that has been subjected *Page 325 
to discrimination in the past. It is entirely possible that an American Indian logo, mascot or nickname could cause an American Indian harm by reinforcing a stereotype and/or creating an intimidating or offensive environment, thus perpetuating past discrimination. Therefore, the language of the statute and the rule is comprehensive enough that an American Indian logo, mascot or nickname used by a public school could be a violation of section 118.13.
American Indian logos, mascots and nicknames, however, are not per se violations of section 118.13. Certainly not all images or nicknames depicting a protected class are intrinsically negative or offensive. In fact, the groups themselves often use self-images to project a positive impression. The mere name of a tribe such as "Seminole" could, under the facts of a given case, be wholly neutral.
Section 118.13(3)(a)1. provides that appeals of the superintendent's decisions under this subsection are subject to chapter 227 review. This implies that there must be a contested case before the superintendent with findings of fact, conclusions of law and a record containing evidence. Therefore, whether or not a violation exists must be determined on a case-by-case basis after such a hearing.
You have also asked if intent is a necessary element of a finding of discrimination under section 118.13. In my opinion there is no requirement of intent except for the provision in section 118.13(4). Neither the statute nor the rule expressly or impliedly require intent for a general finding of discrimination. Had the Legislature wanted findings of discrimination to apply only to intentional acts, it would have so provided. Therefore, if discrimination is found to exist, it exists regardless of intent. Section 118.13(4) provides, however, that if intent can be demonstrated, financial sanctions may be imposed. For example, noncompliance with a superintendent's administrative order may be strong evidence of "intent," thus enhancing the possibility of a civil forfeiture action under section 118.13(4). *Page 326 
In conclusion, I am of the opinion that Wisconsin Administrative Code chapter PI 9 is consistent with legislative intent, and American Indian logos, mascots and nicknames used by public schools may violate section 118.13, whether or not they are intended to be discriminatory.
JED:WDW *Page 327