**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Todd Steven ERBAN, Defendant and Appellant.**

**Cr. No. 870281.**

Supreme Court of North Dakota.

Sept. 20, 1988.

---

Mark Rainer Boening (argued), Asst. States Atty., Fargo, for plaintiff and appellee.

C. Charles Chinquist (argued), Fargo, for defendant and appellant.

MESCHKE, Justice.

Todd Erban appealed from a jury conviction of the crime of attempted manufacture of a controlled substance. We affirm.

In February 1987, Dennis Carlson, who was assisting authorities in drug investigations, contacted Erban about manufacturing "kitchen crank." "Kitchen crank" is street vernacular for methamphetamine. Eventually, Erban agreed to meet with Carlson and a buyer at a restaurant in south Fargo. There, Paul Bazzano, a Drug Enforcement Unit agent acting undercover, paid Erban $100 to produce a sample of kitchen crank. Carlson and Erban then drove to several stores in the Fargo–Moorhead area, obtaining the materials sought by Erban to produce the kitchen crank.

Erban went to a friend's apartment and attempted to produce kitchen crank using Benzedrex inhalers and muriatic acid. Erban was arrested upon leaving the apartment. He was charged with manufacture of a controlled substance. After obtaining consent, officers searched the apartment and confiscated a glass baking dish con-

taining a powdery substance believed to be a controlled substance.

Laboratory analysis established that the substance was propylhexedrine, which is not a controlled substance. State Chemist Aaron Rash testified that if Erban had used the same technique with a Vicks inhaler he would have produced the controlled substance 1–desoxyephedrine, an isomer of methamphetamine. In effect, Erban did not produce a controlled substance because he erroneously used Benzedrex inhalers instead of Vicks inhalers. Erban admitted at trial, however, that if he had known he needed to use Vicks inhalers to produce kitchen crank he would have done so.

Upon learning that the substance actually produced was not controlled, the State amended its charge to attempted manufacture of a controlled substance. A jury trial brought a verdict of guilty and a judgment of conviction. Erban appealed, raising these issues:

1) Is 1–desoxyephedrine a controlled substance?

2) Can Erban be convicted of attempt when it was impossible for him to manufacture a controlled substance from the materials he used?

3) Did the trial court abuse its discretion in denying Erban a continuance?

4) Did the trial court adequately instruct the jury on entrapment?

## CONTROLLED SUBSTANCE

Erban argued that 1–desoxyephedrine was not controlled by state and federal law and therefore it was not unlawful for him to attempt to manufacture it.

■ The State asserted that Erban failed to raise this issue in the trial court which precludes appellate consideration of it. Generally matters not raised in the trial court will not be considered on appeal. *See, e.g., State v. Manke*, 361 N.W.2d 247, 249 (N.D.1985). Rule 52(b), N.D.R.Crim.P., however, provides that "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The explanatory note to Rule 52(b) makes it clear that the power to notice obvious error should be exercised cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. If the claimed error is not constitutional, we must determine whether the error had a significant impact upon the verdict. *State v. Smuda*, 419 N.W.2d 166, 168 (N.D.1988).

If the substance intended to be manufactured was not controlled, it would have had a clear impact on the verdict and conviction would be a serious injustice. If Erban's assertion is correct, then his actions were not criminal. One cannot be convicted of attempt to manufacture a controlled substance if the intended substance is not controlled. *See* Rule 12(b)(2), N.D.R.Crim.P. (failure to charge an offense "shall be noticed by the court at any time during the pendency of the proceeding"). We therefore conclude that this issue can be reviewed.

To analyze Erban's argument an outline of state and federal drug laws is useful. Section 19–03.1–23(1), N.D.C.C., makes it unlawful to manufacture a "controlled substance," which is defined in Section 19–03.-1–01(4), N.D.C.C., as a "drug, substance, or immediate precursor" listed in schedules set out in the Code. "[A]ny material, compound, mixture, or preparation which contains any quantity of" methamphetamine, its salts, isomers, and salts of isomers are listed as Schedule II controlled substances. Section 19–03.1–07(5), N.D.C.C. Thus, according to expert witnesses in this case, 1–desoxyephedrine is an isomer of methamphetamine and is controlled.

Section 19–03.1–02(4), N.D.C.C., however, says:

"If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the [North Dakota controlled substances] board, the board shall similarly control the substance under this chapter after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling, or deleting a substance, unless within that thirty-day period, the

board objects to inclusion, rescheduling, or deletion. In that case, the board shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the board shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling, or deletion under this chapter by the board, control under this chapter is stayed until the board publishes its decision."

Thus, under certain circumstances, a drug which is deleted from the federal drug schedules will automatically be deleted from the state schedules.

The federal drug statutes similarly set out schedules of controlled substances and grant the Attorney General authority to add, delete, or reschedule drugs based upon statutory criteria. *See* Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 801 et seq. "[A]ny material, compound, mixture, or preparation which contains any quantity of" methamphetamine, its salts, isomers, and salts of isomers are currently listed as Schedule II controlled substances under federal law. 21 C.F.R. § 1308.12(d) (1988).

Erban argued that the substance 1–desoxyephedrine was excluded from the federal schedules, and thus from the state schedules, pursuant to the regulation codified at 21 C.F.R. § 1308.22 (1988), which excluded from all schedules certain nonnarcotic substances which may be lawfully sold over the counter. Excluded by this listing was the Vicks inhaler containing 1–desoxyephedrine.

Erban argued that it was the substance 1–desoxyephedrine itself which was excluded from the schedules by this regulation, not just the Vicks inhaler which contains a small amount of it. The statutory and regulatory arrangement, however, demonstrates that 21 C.F.R. § 1308.22 excluded only the over-the-counter preparation listed, *not* it's component which is also listed. The clearest indication is separate listings of different over-the-counter preparations, each containing the same controlled substance. For example, the current listing

has 34 separate over-the-counter preparations which contain phenobarbital. Following Erban's suggested interpretation of the regulation, phenobarbital would be wholly excluded from all schedules. If that were so, it would make no sense to list it 34 separate times. The only plausible reading of the regulation is that it excluded the listed over-the-counter preparation which contains a small dosage of the substance listed in the schedules, but does not exclude the component substance itself. This makes it logical to list individually each over-the-counter preparation in 21 C.F.R. § 1308.22. If the Attorney General intended to exclude all forms of phenobarbital or 1–desoxyephedrine from the schedules of controlled substances, he could simply list that substance once, without mentioning each different over-the-counter preparation containing it.

■ Therefore, we conclude that 1–desoxyephedrine was not deleted from the federal schedules of controlled substances, and it therefore remained controlled under Section 19–03.1–07(5), N.D.C.C.

## IMPOSSIBILITY

■ Erban asserted that he cannot be convicted of attempt to manufacture a controlled substance because it was "factually and legally impossible" for him to manufacture a controlled substance with the materials he used.

Section 12.1–06–01(1), N.D.C.C., provides: "A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A 'substantial step' is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be."

The trial court instructed the jury that in order to find Erban guilty it had to find that he intentionally engaged in conduct that constituted a substantial step toward the commission of a crime and that Erban intended to manufacture methamphetamine. By returning a verdict of guilty, the jury found that both elements had been established. There was substantial evidence to support that verdict.

Erban asserted, however, that the ultimate impossibility of completing the crime was a defense. But, Section 12.1–06–01(1), N.D.C.C., specifically says that impossibility is not a defense "if the crime could have been committed had the attendant circumstances been as the actor believed them to be." Erban believed that by using Benzedrex inhalers he could extract "kitchen crank," or methamphetamine. The reason he failed to do so was that he had a "bad recipe"; had he used Vicks inhalers he would have produced the controlled substance 1–desoxyephedrine, an isomer of methamphetamine. Erban admitted on cross-examination that he would have used Vicks inhalers if he had known of his mistake.

Our criminal attempt statute is derived from the identical provision in the proposed Federal Criminal Code. Thus, the history of the federal code can be persuasive when we interpret our statute. *State v. Hogie,* 424 N.W.2d 630, 634 (N.D.1988). The history of the federal criminal attempt provision establishes that it was intended to broadly abolish any defense based upon impossibility of completion of the crime:

"6. *Impossibility Not a Defense.*— Although there appear to be no Federal cases dealing clearly with the question of whether impossibility is a defense to a charge of attempt, that question has arisen in other American jurisdictions and should be anticipated in the drafting of a Federal attempt statute. The question is whether a person should be punishable if (a) he receives goods believing them to be stolen when, in fact, they are not, (b) he shoots at a dummy believing that it is a person he intends to kill, or (c) with an intent to take its contents, he opens a safe which proves to be empty.

This question is frequently discussed in unhelpful terms of whether the mistake is one of fact or of law. The last sentence of proposed subsection (1) follows the view that such mistakes, whether of fact or of law, should not constitute a defense.

"This approach is consistent with the overwhelming modern view, and is taken in the New York and Illinois Code revisions, as well as all those still in the proposal stage. The reasons have been succinctly stated as follows:

'In all of these cases (1) criminal purpose has been clearly demonstrated, (2) the actor has gone as far as he could in implementing that purpose, and (3) as a result, the actor's dangerousness is plainly manifested.'

"Concern has been expressed that such an approach permits conviction in what are called 'extreme cases,' such as that of the person who sticks a pin into a doll believing that it will kill the person in whose image the doll was fashioned. This concern was accommodated in the Model Penal Code by a provision (section 5.05(2)) permitting the court in any case to lower the grade of the offense or, in extreme cases, to dismiss the prosecution where the conduct 'is so inherently unlikely to result or culminate in the commission of a crime that neither such conduct nor the actor presents a public danger warranting' punishment assigned to it. There is disagreement among recent revisions as to whether such a provision is necessary. It is not followed here because, it is believed, such cases will fall into one of the following categories:

"(a) cases in which lack of mental responsibility will be a good defense;

"(b) cases in which the inherent unlikelihood that the conduct will result or culminate in commission of the crime may constitute a reasonable doubt as to the actor's intent to commit the crime, justifying exercise of discretion by the prosecutor not to proceed;

"(c) cases in which, despite the inherent unlikelihood of success of this

particular attempt, firmness of criminal purpose is so clear that the actor should be prosecuted because, being educated by his failure, he is likely to try to achieve the same result in another, more dangerous manner." I *Working Papers of the National Commission on Reform of Federal Criminal Laws* 360–361 (1970) (footnotes omitted).

Section 12.1–06–01(1) clearly applies to both factual and legal impossibility. The Working Papers show that the statute is intended to abolish impossibility as a defense whether based upon fact, law, or a combination of both.[1] Applying the reasons stated in the Working Papers, (1) Erban's criminal purpose was clearly demonstrated; (2) he had gone as far as he could in implementing that purpose; and, (3) as a result, his dangerousness was plainly manifested. Under these circumstances, Erban may not escape prosecution because he clumsily used the wrong brand of inhaler.

We conclude that the factual impossibility of extracting a controlled substance in these circumstances is not a defense to the criminal charge of attempted manufacture of a controlled substance.

## CONTINUANCE

■ Erban asserted that the trial court erred in denying his motion for a continuance.

A trial court has great latitude and discretion in conducting a trial. *Great Plains Supply Co. v. Erickson*, 398 N.W.2d 732, 734 (N.D.1986). A trial court's denial of a motion for a continuance will not be overturned on appeal unless the court has abused its discretion. *State v. Johnson*, 379 N.W.2d 291, 293–294 (N.D.1986). An abuse of discretion is an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *State v. Johnson, supra*, at 294.

Dennis Carlson, the police informant, was subpoenaed and testified at the preliminary hearing. Erban's counsel sought to subpoena Carlson again before trial but Carlson could not then be located. During presentation of Erban's defense, counsel moved for a continuance to secure Carlson's presence. The court denied the motion. Erban did not offer into evidence Carlson's preliminary hearing testimony or advise the court of the expected content of Carlson's testimony if called at trial.

We see no abuse of this trial court's discretion in denying the continuance requested.

## ENTRAPMENT INSTRUCTIONS

■ Erban asserted that the trial court should have instructed the jury that Dennis Carlson was, as a matter of law, a "law enforcement agent" for purposes of the entrapment defense.

Pursuant to Section 12.1–05–11(3), N.D.C.C., any person cooperating with a law enforcement agency is a "law enforcement agent" for purposes of the entrapment defense. The trial court so instructed the jury. Erban contended, however, that because there was no dispute that Carlson was cooperating with law enforcement officials the jury should have been instructed that Carlson was a "law enforcement agent" as a matter of law.

A trial court need not instruct in the specific language requested by the defendant even though it is a correct statement of law. *State v. White*, 390 N.W.2d 43, 45

1. The Working Papers recognize only one type of "impossibility" which would relieve a defendant of culpability:

"Excluding the defense of impossibility, however, is not intended to permit prosecution of a person who believes that he is violating a law when, in fact, no such law exists, for example, a person who possesses liquor in a jurisdiction which he erroneously believes is 'dry.' Exclusion of such imaginary crimes would appear to be accomplished by provisions in the proposed Code which state than an offense is only what a Federal law defines as such. A belief, therefore, that what one is doing is criminal would not meet the requirement that the conduct be planned to culminate in commission of an 'offense' or the condition that the 'offense' could be committed if the attendent circumstances were as he believed them to be." I *Working Papers, supra*, at 361 (footnotes omitted).

Thus, if the substance Erban intended to manufacture was not a controlled one, there would have been no crime attempted.

(N.D.1986). Instructions which fairly inform the jury of the applicable law are all that is required. *State v. Dachtler*, 318 N.W.2d 769, 774 (N.D.1982). The instruction given by the trial court was a correct statement of the law and fairly informed the jury of the applicable law. Although it may have been preferable to advise the jury that Carlson was a "law enforcement agent," the trial court's failure to do so does not constitute reversible error.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, J., concurs in the result.