**UNITED STATES of America, Plaintiff,**

v.

**Oscar Purisima VIERNES, Defendant.**

**Cr. No. 89–01676 DAE–03.**

United States District Court,
D. Hawaii.

April 18, 1991.

Daniel A. Bent by Michael K. Kawahara, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

Peter Wolff, Honolulu, Hawaii, for Oscar Purisima Viernes.

## MEMORANDUM AND ORDER

PENCE, District Judge.

### I. *Introduction*

This matter is before the court on defendant Oscar Purisima Viernes' ("Viernes") Motion to Dismiss Indictment ("Motion to Dismiss") for failure to charge a criminal offense. The premise underlying his motion is that methamphetamine, which defendant is charged with importing, distributing and possessing, is not a controlled substance.

### II. *Background*

The Indictment filed against Viernes indicates that on or about October 13, 1989, in the Republic of the Philippines, defendant Douglas Tumaneng asked defendant Susan Bumanglag [1] to transport "shabu," a slang term for methamphetamine, from the Philippines back to Honolulu. Moreover, on or about October 18, 1989 in the Philippines, Tumaneng told Bumanglag that upon her arrival back in Honolulu, she should contact either defendant Balcobero or Viernes to pick up the "shabu" from her.

On or about October 18, 1989, Bumanglag departed from Manila, Republic of the Philippines, en route to Honolulu, Hawaii. The Indictment alleges that on the same day, at the Honolulu International Airport, Hawaii, Bumanglag possessed approximately 500 grams of methamphetamine in her checked-in luggage. Also on that day, Viernes and Balcobero are alleged to have spoken on the telephone with Bumanglag. Then later that day, Viernes met with Bumanglag at the Airport Holiday Inn in Honolulu.

Finally, the Indictment alleges that from a time unknown to the Grand Jury up through and including October 18, 1989, in the District of Hawaii and elsewhere, defendant Viernes and his codefendants knowingly and intentionally conspired to

1. Viernes was indicted along with three other   codefendants.

import into the United States and distribute 500 grams of methamphetamine.

On November 9, 1989 the Grand Jury handed down the aforementioned six-count Indictment against Viernes and his co-defendants. Counts I and II charge all four defendants with conspiracy to import and distribute methamphetamine, a Schedule III controlled substance. Counts III and IV charge the defendants with knowing and intentional importation and distribution of 500 grams of methamphetamine. Count V of the Indictment charges Viernes individually with knowing and intentional possession of "a quantity" (unspecified) of methamphetamine. Count VI charges Balcobero individually with the same offense.

### III. *Discussion*

The following is a list of defendant's arguments supporting his Motion to Dismiss: (1) methamphetamine is excluded from the schedules of controlled substances and therefore the government has failed to charge defendant with a criminal offense; (2) assuming that it is ambiguous whether methamphetamine is excluded from the schedules of controlled substances, this court should apply the "rule of lenity" and construe the ambiguous statutory scheme in defendant's favor; (3) assuming that it is ambiguous whether methamphetamine is excluded from the schedules of controlled substances, the statutory scheme is void for vagueness in violation of due process; and (4) assuming that defendant's alleged actions concerning methamphetamine were illegal, the statutory scheme violates equal protection by permitting "corporate trafficking" in methamphetamine and permitting other individuals to possess methamphetamine.

Each of these arguments shall be analyzed in turn.

### A. Failure to Charge a Criminal Offense

Defendant begins by pointing out that all of the crimes with which he is charged are predicated on the assumed status of methamphetamine as a controlled substance. However, defendant argues that methamphetamine is in fact excluded from the schedules of controlled substances.

■ Pursuant to 21 U.S.C. § 802(6), the "term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 812(c), Schedule III(a)(3) lists as a controlled substance: "Any substance … which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."

However, pursuant to 21 U.S.C. § 811(g)(1), the "Attorney General shall by regulation exclude any non-narcotic substance from a schedule if such substance may, under the Federal Food, Drug and Cosmetic Act, be lawfully sold over the counter without a prescription." Moreover, "the addition of products to the list of excluded non-narcotic products has the effect of excluding them from all measures of control imposed by the Controlled Substances Act of 1970 and its implementing regulations." 55 Fed.Reg. 12162 (1990) (to be codified at 7 C.F.R. § 1308.22).

Defendant points out that the label on the product known as the "Vicks Inhaler" lists as one of its active ingredients "1–Desoxyephedrine." In 21 C.F.R. § 1308.22 (1990), the Attorney General, through the Drug Enforcement Administration, has excluded the active ingredient 1–Desoxyephedrine in the Vicks Inhaler "from all schedules pursuant to section 201(g)(1) of the [Controlled Substances] Act (21 U.S.C. § 811(g)(1))." Further, based on its recognition that 1–Desoxyephedrine is an isomer of methamphetamine, the government concedes that desoxyephedrine may be equated with methamphetamine for the purposes of this motion.

In light of this, defendant Viernes argues that because desoxyephedrine, i.e., methamphetamine, has been excluded "from all schedules" of controlled substances, it was not illegal for him to engage in activities relating to its possession, importation, and distribution. Therefore, defendant concludes, the Indictment fails to charge Viernes with an offense against federal law.

However, a major premise in defendant's argument is flawed. Defendant contends that *desoxyephedrine* has been excluded from the schedules of controlled substances. This is wrong. Vicks Inhaler, *not* desoxyephedrine itself, is excluded from the schedules. It just so happens that desoxyephedrine is a minor ingredient of Vicks Inhaler.[2]

Thus, it would seem that because desoxyephedrine is only a minor ingredient of Vicks Inhaler, Vicks Inhaler has been exempted as an over-the-counter drug. This strikes the court as a most apt illustration of the term "controlled" substance.

Desoxyephedrine has been designated by the government as a potentially dangerous substance whose use must be "controlled." By insuring that it is used only in specific limited quantities as part of the Vicks Inhaler nasal decongestant, the government has achieved its purpose of "controlling" its use. On the other hand, if a chemist were to use other chemicals, for example, to extract pounds of desoxyephedrine from numerous Vicks Inhalers for consumption as a psychoactive stimulant, then the use of the substance would no longer be "controlled" as the government has prescribed and its possession would be criminal.

Here, defendant has been charged with criminal activity involving methamphetamine, not Vicks Inhaler. While, as defendant avers, "desoxyephedrine is methamphetamine," it does not follow that desoxyephedrine is Vicks Inhaler. Rather, desoxyephedrine *used in limited quantities and in concert with other ingredients* constitutes Vicks Inhaler. In such a mix and in such a quantity, the government has indeed decriminalized desoxyephedrine. When not mixed into a Vicks Inhaler, though, it is still classified as a controlled substance. Accordingly, defendant's claim

that the Indictment fails to charge him with a criminal offense is meritless.

This conclusion is further supported by the North Dakota Supreme Court's analysis in *State v. Erban*, 429 N.W.2d 408 (N.D.1988).[3] In *Erban*, defendant appealed from a jury conviction of the crime of attempted manufacture of a controlled substance. Defendant had attempted to manufacture "kitchen crank" (slang for methamphetamine) by using Benzedrex inhalers. 429 N.W.2d at 409. Instead of methamphetamine, though, defendant concocted propylhexedrine, which is not a controlled substance. *Id.* at 410. In effect, Erban did not produce a controlled substance because he erroneously used Benzedrex inhalers instead of Vicks inhalers. *Id.* Defendant admitted at trial, however, that if he had known he needed to use Vicks inhalers to produce kitchen crank he would have done so. *Id.*

On appeal, defendant challenged his conviction for the same reason cited by Viernes here, to wit, that 1–desoxyephedrine was not controlled by state and federal law because Vicks Inhalers were excluded from the federal, and thus from the state, schedules under 21 C.F.R. § 1308.22. However, the North Dakota Supreme Court rejected defendant's argument. It held that the statutory and regulatory arrangement demonstrated that 21 C.F.R. § 1308.22 excluded only the over-the-counter preparation listed, *not* its component which is also listed. The court justified this conclusion by making the following perspicacious observation:

> The clearest indication is separate listings of different over-the-counter preparations, each containing the same controlled substance. For example, the current listing has 34 separate over-the-counter preparations which contain phenobarbital. Following *Erban's* suggest-

---

**2.** In an Affidavit submitted by defendant, one Dr. Hagadone states that the Vicks Inhaler label lists, as one of its active ingredients, 50 m.g. of 1–desoxyephedrine.

**3.** It should be noted that in its Opposition, the government cites (and attaches as exhibits) two unpublished district court opinions from Oregon, *United States v. Pickrel,* Cr. No. 90–60026

(D.Ore. Oct. 15, 1990), and *United States v. Miller,* Cr. No. 84–60013–2 (D.Ore. Jan. 2, 1991), as well as one unpublished district court opinion from Nevada, *United States v. Housley,* 751 F.Supp. 1446 (D.Nev.1990) in support of the proposition that 1–desoxyephedrine was not deleted from the federal schedules of controlled substances.

ed interpretation of the regulation, phenobarbital would be wholly excluded from all schedules. If that were so, it would make no sense to list it 34 separate times. The only plausible reading of the regulation is that it excluded the listed over-the-counter preparation which contains a small dosage of the substance listed in the schedules, but does not exclude the component substance itself. This makes it logical to individually each over-the-counter preparation in 21 C.F.R. § 1308.22. If the Attorney General intended to exclude all forms of phenobarbital or 1–desoxyephedrine from the schedules of controlled substances, he could simply list that substance once, without mentioning each different over-the-counter preparation containing it.

429 N.W.2d at 411.

Given the rejection of defendant's predicate argument that 1–desoxyephedrine was deleted from the federal schedules of controlled substances, defendant's other arguments fall like dominos.

### B. The Rule of Lenity

■ The first such argument reasons that assuming it is ambiguous whether methamphetamine is excluded from the schedules of controlled substances, this court should apply the "rule of lenity" and construe the ambiguous statutory scheme in defendant's favor.

The rule of lenity "serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Crandon v. United States,* 494 U.S. 152, 110 S.Ct. 997, 1002, 108 L.Ed.2d 132 (1990). For " 'when choice has to be made between two readings of what Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.' " *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22 (1952)).

In this case there is no need to apply the rule of lenity, though, since the statutory scheme is in no way ambiguous. Using the language of the *Bass* case, 404 U.S. at 336, 92 S.Ct. at 515, no choice need be made here between two readings of what Congress has made a crime. As mentioned previously, Congress has clearly declared in 21 U.S.C. § 812(c), Schedule III(a)(3) that a controlled substance includes "any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."

Moreover, in 21 C.F.R. § 1308.22 the Attorney General excludes as a non-narcotic over-the-counter substance Vicks Inhaler, which happens to have as one of its ingredients 1–desoxyephedrine. Thus, to the extent that 1–desoxyephedrine is used in limited quantities in the Vicks Inhaler while mixed in with the Vicks Inhaler's other ingredients, it is excluded from 21 U.S.C. § 812(c), Schedule III(a)(3). In every other possible instance it is not excluded. Such a statutory scheme could not be more crystal clear.

### C. Void–For–Vagueness

■ Accordingly, defendant's next argument must also fail. More specifically, defendant argues that assuming it is ambiguous whether methamphetamine is excluded from the schedules of controlled substances, the statutory scheme applied to defendant is void for vagueness.

The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

In this case, as demonstrated above, the penal statute, 21 U.S.C. § 812(c), Schedule III(a)(3) defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is being prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. This is true notwithstanding 21 C.F.R. § 1308.22's decriminalization of Vicks Inhalers. Under this statutory

scheme, an ordinary person can understand that methamphetamine is a controlled substance and Vicks Inhalers are not.

### D. Equal Protection

 Finally, considering the government's aforementioned rationale for excluding Vicks Inhalers from the controlled substance schedules, defendant's final argument is similarly unavailing. In that argument, defendant states that assuming his activities relating to methamphetamine were illegal, the statutory scheme permitting "corporate trafficking" in methamphetamine violates equal protection.

The constitutional principle of equal protection denies the government:

> the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

*Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972) (quoting *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225 (1971)).

Here, the "classification," if any there be, excluding Vicks Inhalers from the controlled substances schedules is reasonable, not arbitrary, and rests on a ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. It would appear to this court that the government excluded Vicks Inhalers since they use desoxyephedrine in a limited and diluted form for the purpose of serving as a decongestant.

Such a classification is therefore reasonable, not arbitrary, and there is a clear connection between the purpose of the statute designating methamphetamine a controlled substance and the exclusion at issue here. The Vicks Inhalers exclusion reflects the government's determination that Vicks Inhalers could be "controlled" given their limited and uniform use of desoxyephedrine for valid medical reasons.

### IV. *Conclusion*

For the reasons stated above, defendant's Motion to Dismiss Indictment is DENIED.

IT IS SO ORDERED